Havona Madama (HM 4711)
Madama Griffitts LLP
450 Park Avenue South
Floor 6
New York, NY 10016
Telephone (212) 209-5450

Attorney for all Defendants
and Third Party Plaintiffs

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------------------x

PITBULL PRODUCTIONS, INC.,      :

     :

                   Plaintiff, :    05 CIVIL 7593

     :

                -against-      :    FIRST AMENDED ANSWER AND
                                           COUNTERCLAIMS
                                           TO FIRST AMENDED COMPLAINT

     :

PHILIP BLEICHER AND DEVIN WILEY INDIVIDUALLY AND
D/B/A FLAVA WORKS, 1DISTRIBUTION,      :

     :

                Defendants.

---------------------------------------------------------------------------- x


---------------------------------------------------------------------------- x

PHILIP BLEICHER AND DEVIN WILEY INDIVIDUALLY,      :
FLAVAWORKS, LUKEBABY PRODUCTIONS,

     :

                Third Party Plaintiffs,

     :    THIRD PARTY COMPLAINT
                -against-

     :

PITBULL PRODUCTIONS, INC., EDWARD DESMOND,
EDWARDO MILITELLO, MAXON PRIVATE BANKING, MAXON      :
CAPITAL CORPORATION, DESMOND ENTERPRISES, AND
ANDRE MAISONETTE A/K/A JALIN FUENTES,      :

     :

                Third Party Defendants.

     :

---------------------------------------------------------------------------- x

## ANSWER AND COUNTERCLAIMS

Defendants, Flava Works, Inc. ("Flave Works"), Phillip Bleicher ("Bleicher"), Devin Wiley ("Wiley"), and 1Distribution ("1Distribution"), s/h/a Philip Bleicher and Devin Wiley individually and d/b/a Flava Works, 1Distribution (collectively "Defendants"), through their undersigned attorneys, answer the First Amended Complaint ("Complaint") by this First Amended Answer to the First Amended Complaint ("Answer"), thereby replacing and withdrawing each and every pleading previously filed by each and every Defendant in this action, as set forth below.

Except as hereinafter expressly admitted, qualified, or otherwise admitted, Defendants specifically deny each and every allegation, statement, matter and thing contained in the Complaint. Defendants respond to the numbered allegations in the Complaint on knowledge to themselves and on information and belief as to other matters, as follows:

## PARTIES

1. Defendants lack sufficient information to form a belief as to the truth of the allegations in Paragraph 1. Upon information and belief, Defendants allege the address is not a place of business, and the actual place of business is located in North Waltham, MA utilizing a post office address of 550244, North Waltham, MA 02455.

2. Defendants admit that Flava Works, Inc. is an Illinois corporation and otherwise deny the allegations in Paragraph 2.

3. Defendants admit that Philip Bleicher is the sole shareholder of Flava Works, Inc. and otherwise deny the allegations in Paragraph 3.

4. Defendants admit 1 Distribution is organized and existing under the laws of the State of California.

5. Defendants deny allegations in 5, 6, 7 & 8 of the Complaint, subject matter jurisdiction, personal jurisdiction, and venue are improper in this Court as to all Defendants.

6.     Defendants lack sufficient information to form a belief as to the truth of the allegations in Paragraphs 9, 10, 11 and 12 of the Complaint, except to the extent that Plaintiff admits their video is "in the niche arena of gay blatino films".

7.     Defendants deny the allegations in paragraphs 13, 14, 15 and 16 of the Complaint.

8.     Defendants lack sufficient information to form a belief as to the truth of allegation 17 of the Complaint.

9.     Defendants deny the allegations in paragraphs 18, 19, 20, 21, 22, 23 and 24 of the Complaint, except to the extent Plaintiff admits limited use of the alleged mark "in connection with gay blatino films".

<u>JURISDICTION AND VENUE</u>

10.     Defendants repeat and reallege the allegation contained in Paragraphs 1 through 9 of the Answer with the same force and effect as though the same has been fully set forth at length herein.

11.     Jurisdiction and Venue are improper in this matter against all Defendants, the unsupported improper claims for subject matter jurisdiction (by way of example, the federal claims presented are not improperly brought, no trademark exists for the alleged product, alternatively, the claim for damages does not meet the requirement for diversity jurisdiction), personal jurisdiction (Defendants are not residents of New York and do not meet minimum contacts requirements), and venue must be denied and this matter must be removed or dismissed because the forum is inconvenient and the Plaintiff does not have standing to sue on this matter in this district.  This forum is inconvenient for all parties, because no party, not even Plaintiff, are alleged to be a resident of the State of New York.

12.     This matter should have been filed in the courts in the State of Illinois for proper resolution of the claims alleged against Bleicher, Wiley and Flava Works, and in California for the claims alleged against 1Distribution.  The facts as alleged in the Complaint do not support a claim for damages under any federal statute and therefore

these claims are more properly brought in the state courts in the appropriate venues. The court must dismiss this Complaint against all Defendants.

13. Personal Jurisdiction is improper against the individuals Bleicher and Wiley on the face of the Complaint. There are no facts in the Complaint which allege either Defendant as an individual resides in the district, conducts a business in their name in the district, personally committed any wrong against a resident of the district, or otherwise has sufficient contacts within the district to warrant extension of jurisdiction over them personally. All damages in the Complaint are alleged to result from the acts of Flava Works and therefore as merely a shareholder and an employee, respectively, Bleicher and Wiley are not liable for any alleged injuries to Plaintiff as complained.

## FACTUAL BACKGROUND

14. Defendants repeat and reallege the allegations contained in Paragraphs 1 through 13 of the Answer with the same force and effect as though the same has been fully set forth at length herein.

15. Defendant, Flava Works, is an internationally recognized producer of adult entertainment videos.

16. Defendant Flava Works was previously sue herein as Lukebaby Productions, Inc. and Plaintiff and Third Party Defendants have at times referred to the two companies interchangeably, therefore references herein to either Flava Works or Lukebaby may be inaccurate as to the corporation. Throughout the Answer, the use of Flava Works and Lukebaby shall be interchangeable solely for purposes of convenience; and the use of either name when the other may be intended as and shall not be deemed an admission in any way, shape or form, including without limitation by any party that Flava Works and Lukebaby are a partnership, joint venture, agent or subsidiary of the other.

17. EDWARD DESMOND, EDWARDO MILITELLO, MAXON PRIVATE BANKING, MAXON CAPITAL CORPORATION, DESMOND ENTERPRISES, AND ANDRE MAISONETTE A/K/A JALIN FUENTES, PITBULL PRODUCTIONS, INC.

("Third-Party Defendants") are the pseudonyms, alter-egos or false names under which Plaintiff operates its business.

18. Upon information and belief, Third Party Defendants, are the owners of Pitbull Productions Inc., Thugporn Platinum Series, and/ or the alleged mark "Hot & Creamy" or the mark "Thugporn Platinum Series".

19. Each Third-Party Defendant is part of a scheme or pattern of behavior whereby the use of numerous fictitious and pseudonymous names and alter-ego business structures enables Third-Party Defendants to act improperly, both individually and in concert, including without limitation to harass, intimidate, extort, bribe, threaten, and embarrass competitive business owners; to maintain fraudulent and frivolous lawsuits; and to conduct anti-competitive and bad faith business practices, for the purposes of restraining trade in their industry and to drive competitors out of business.

20. From February 2002 through January 2004, Andre Maisonette ("Maisonette") was an employee of Lukebaby Productions, Inc. ("Lukebaby") entrusted with access to privileged and confidential information relating to the business of Lukebaby, including without limitation the method used to solicit models, the terms of model contracts, a list of models under contract, relationships with distributors, relationships with producers and the names and ideas of films and websites in development.

21. As part of Maisonette's employment, Maisonette secured the signatures of models for Lukebaby websites on Model Contract and Release forms, and had direct knowledge and information with respect to the contractual relationship between Lukebaby and its models. The Model Contract clearly states models agree to an exclusive modeling agreement with Lukebaby for a period of one year.

22. On or about July 9, 2002, while Maisonette was employed by Lukebaby Edward Desmond ("Desmond") transferred via Western Union the sum of four hundred fifty dollars ($450.00) to Maisonette.

23. Upon information and belief, Desmond simultaneously promised Maisonette a partnership or active role in a competitive business with Lukebaby.

24. Maisonette, from July 2002 through January 2004, worked under false pretenses and through fraudulent statements to Lukebaby, including without limitation

promising to keep all information confidential, collected confidential and privileged information on the business of Lukebaby, developed relationships with Lukebaby's clients and models, and otherwise procured information from Lukebaby and Bleicher for the sole purposes of exploiting the same to the benefit of Desmond, Maisonette, their unincorporated association and Third-Party Defendants.

25.     Maisonette, Desmond and Third-Party Defendants conspired to obtain personal, privileged and confidential information about Bleicher and Lukebaby with the specific intent to use the same to the detriment of Defendants and in furtherance of committing future crimes against Defendants, including without limitation, fraud, extortion, threats, intimidation and transportation of stolen property across state lines (to wit, Illinois to New York), rising to the level of a criminal enterprise and conspiracy affect interstate commerce, in violation of 18 U.S.C. §1962. Maisonette, during his employment with Lukebaby, stole confidential and privileged information from Lukebaby, including without limitation, model lists, mock ups, site designs, contracts, and computer files, with the express intent to use the material to create a competing business.

26.     During Maisonette's employment with Lukebaby in September 2003, Lukebaby began to develop a product and website called "ThugPorno" along with ThugBoy and SubwayBoy to compliment its already extensive list of websites, with an expectation to launch the same in 2004.

27.     After development of the "ThugPorno" brand began but prior to the date of the expected launch, and without the knowledge or consent of Lukebaby, Maisonette and Desmond used the information Maisonette gained from his fiduciary and employee relationship with Lukebaby to develop a competing brand and website called "ThugPorn", imitating not only the name, but the logo design, and the look of the website in development at LukeBaby.

28.     In October 2003, Maisonette terminated his employment with Lukebaby, and became a Work-For-Hire contractor subject to a contract and continued to have full access to all of Lukebaby's project development.

29.     On or about December 2003, Maisonette, Desmond and Third-Party Defendants, using the name, Pitbull Productions, Inc., without actually incorporating

Pitbull Productions, Inc., purchased the domain name www.thugporn.com from Tyrone Glenn, without any goodwill associated therewith, with the intent to launch a competitive website prior to Lukebaby's intended launch date for www.thugporno.com.

30.     At that time, Enrique Cruz owned and operated a business with the domain name www.ThugPorn.tv, which he had operated since 1995, and Cruz had continuously used the mark "Thug Porn" from 1995 through 2004. Thug porn was alternatively a common name used in the adult entertainment videos and internet downloads industry to describe a certain type of pornographic product.

31.     On or about December 16, 2003, according to a prior statement of Plaintiff, without the knowledge of Lukebaby, Maisonette, Desmond and Third-Party Defendants placed an "under construction" placeholder at the domain name www.thugporn.com.

32.     On or about January 31, 2004, without the knowledge of Lukebaby, Desmond began purchasing competing website names to Lukebaby's well known websites, including purchasing Coco-boys.com to compete with Lukebaby's famous cocoboyz.com.

33.     In the normal course of business, Lukebaby launched its website at www.thugporno.com on February 12, 2004.

34.     On or about February 23, 2004, attorneys purportedly representing Pitbull Productions, Inc., which at that time was an unincorporated association consisting of Maisonette and Desmond, sent out notices to Lukebaby's website hosting company demanding suspension of the account for infringement of trademark and copyright pursuant to a purported Digital Millenium Copyright Act notice. The Infringement Notice was false, fraudulent and defamatory to Lukebaby; the trademark was not, as they claimed, registered, it was simply filed with the USPTO in December 2003. Additionally, The trademark application was for "thugporno.com since 2003" but the claim was for use since 1998, which is obviously a misstatement of truth, since it clearly states use began in 2003. The notice was fraudulent and made purely to harass and intimidate Lukebaby from continuing to use the name and product they had been developing for several months.

35.     Desmond began making harassing and threatening calls to Lukebaby and Bleicher to intimidate Lukebaby into transferring Thugporno.com to Pitbull Productions, Inc., including threatening to burn down Bleicher's house and send the Jamaicans to get him.  Desmond also advised Lukebaby that Pitbull was well financed and had unlimited legal resources so they would "bury" Lukebaby in legal bills.

36.     On or about March 4, 2004 Pitbull Productions, Inc. (still an unincorporated association) filed a complaint in the Southern District of New York, against Bleicher, Lukebaby and Next Magazine (a New York company who had purportedly run an advertisement for Lukebaby, sued solely to obtain jurisdiction in New York and to further harass and embarrass Lukebaby in its industry) claiming Trademark and Trade Dress Infringement, False Designation of Origin, Trademark Cybersquatting, Common Law Trademark and Unfair Competition, Copyright Infringement, and Trade Secret Misappropriation.

37.     On or about March 12, 2004 Maisonette and Desmond incorporated Pitbull Productions, Inc., in the state of Delaware.

38.     On or about May 5, 2004 Pitbull Productions, Inc. officially launched the thugporn website.

39.     On or about September 9, 2004, the Complaint 04 CV 1710, Pitbull Productions, Inc. vs. Phillip Bleicher, individually and d/b/a LBPI a/k/a Lukebaby Productions, Inc., Next Magazine, filed in this Court was discontinued pursuant to a settlement agreement between the Parties.  Since that time, the Plaintiff has continued to violate the settlement agreement by intentionally using privileged, confidential or proprietary information obtained by Andre Maisonette while he was employed at Lukebaby Productions, Inc.   Also, the Plaintiff has continued to violate the settlement agreement by divulging the existence of a settlement agreement to other persons, parties and entities.

40.     During the aforementioned lawsuit, Edward Desmond made numerous statements threatening to physically harm, kill and burn down the house of Mr. Bleicher, including without limitation stating "I am going to send the Jamaican's to [your] house" and "[My people] are going to get you in Miami."  Mr. Bleicher, fearing for his life and safety, and to avoid the expense of extended litigation, agreed to enter into a settlement

agreement which deprived him of money and valuable intellectual property rights. Lukebaby settled as well to avoid the expense of litigation and without admitting any wrongdoing.

41.     Pursuant to the General Releases in the Settlement Agreement, Pitbull released all Defendants from all claims made against them in the Second Amended Complaint; but Defendants, concerned that the settlement would not stop the Third-Party Defendants from harassing Bleicher and Lukebaby only agreed to release Pitbull from claims in the Second Amended Complaint as well.  Simply, Defendants did not release Third-Party Defendants from any counterclaims made during the lawsuit, specifically, any claims related to anti-competitive behavior, slander, fraud, interference with business and unfair competition.

42.     Upon information and belief, using the same tactics of threats and intimidation and claiming they had "buried" Lukebaby in the courts to get ThugPorno.com, Third-Party Defendants forced Enrique Cruz and Thugporn.tv out of business, despite the fact that Thugporn.tv had existed since 1995 and predated Third-Party Defendants' falsely claimed use of the mark "ThugPorn.com" by more than three (3) years.  Third-Party Defendants created Pitbull with the intention of using bad faith business methods and expensive frivolous lawsuits to monopolize the "blatino" film industry.

43.     During Maisonette's employment with Lukebaby, and continuing until the present, Maisonette and Desmond, and using their pseudonyms, on behalf of the Third-Party Defendants, have directly solicited Lukebaby's models, using information gained from the stolen model lists, with full knowledge of the exclusive contracts between Lukebaby and the models.  In the attempts to entice models to breach contracts with Lukebaby, Third-Party Defendants make disparaging, defamatory, slanderous and libel remarks about Lukebaby, Flava Works and Bleicher, to wit, telling models that Lukebaby is robbing them, that the contracts are not valid, that Bleicher is "an asshole, liar, thief, and fraud, who is trying to compete with Pitbull a more established company."  These statements are made without regard for the truth of the same, the statements are false and known to be false when made, including without limitation, the claim that the newly formed Pitbull is more established than the older company,

Lukebaby. And are made with malice aforethought to unfairly compete with Lukebaby ad Flava Works.

44.     Flava Works has produced several films in the CocoDorm.com Series, called Dorm Life, utilizing numbers to distinguish the progression of the titles coupled with either a detailed description or photos of the contents on the cover.

45.     Dorm Life 7 has a fourteen-member, all black cast and is marketed as a gay black adult film.

46.     In June of 2005, several Flava Works staff members met to discuss the production of Dorm Life 7, intended for distribution in August 2005.  During the meeting, the staff decided that the numbered progression would continue but tag lines would be added to succinctly and graphically illustrate the contents of each succeeding film.

47.     Dorm Life 7 contains a scene which constitutes the first of its kind in gay black porn which the staff agreed should be highlighted in the tag line.  Specifically, the film contains a nine-man bukkake (a group sex practice where the participants take turns ejaculating on a single person).  Therefore, Hot & Creamy was chosen as the best of several choices to describe the contents.

48.     Prior to determining to use the tag line, Flava Works conducted a trademark and copyright search for the mark.  Flava Works' search results confirmed that that there was no registered or filed competitive trademark for "Hot & Creamy".

49.     Prior to determining to use the tag line, Flava Works performed a Google search using the terms Hot, Creamy and Pornography, which yielded thousands of results, including www.hotandcreamy.com an adult entertainment website, not owned or operated by Third-Party Defendants.  Based on the results of the search, which failed to result in a film or film series using Hot and Creamy in the title or as a trademark, Flava Works in good faith determined use of Hot & Creamy as a tag line would not infringe on any intellectual property rights.

50.     Flava Works, with no knowledge of the existence of the film Thugporn

51.     Platinum Series Hot & Creamy, chose the tag line and affixed the same to its product in preparation for distribution.  Flava Works exercised due care in using a tag-line that was in the public domain and not owned by any of its competitors.

52.     On or about August 15, 2005 Flava Works filed a copyright for the film with the title Dorm Life 7: Hot & Creamy.

53.     On or about August 20, 2005 at the Gay Erotic Expo in Los Angeles, California, Desmond violently approached the Flava Works table yelling and threatening bodily harm to Bleicher with respect to the use of the subtitle "Hot & Creamy" for the Dorm Life 7 video.  Desmond threatened to "bury" Bleicher and "send Jamaican's to burn down [Bleicher's] house and business".

54.     Desmond, in the view of numerous witnesses at the business conference for Flava Works' industry, made disparaging remarks about Bleicher and Flava Works' business practices, indicating Bleicher was a thief and a liar, and threatened Bleicher while lunging at him, with the intent to cause bodily harm and with willful disregard for the truth or falsity of the statements and intending thereby to threaten, intimidate and extort from Defendants their lawful property rights.

55.     During the conference, Desmond thereafter trapped Wiley, an employee of Flava Works in the bathroom, where Desmond proceeded to make disparaging comments about Bleicher and Lukebaby and offered the employee an opportunity with Plaintiff.

56.     During the conference, Desmond paced repeatedly in front of the booth housing Flava Works and 1 Distribution, threatening a lawsuit against 1 Distribution and berating Bleicher to Sam Manning of 1 Distribution, stating Bleicher is an "asshole, steals Pitbull's models, copies Pitbull's titles, mistreats the Flava Works staff, and is an ass to work with or for", and encouraged 1 Distribution to breach its contract with Flava Works and not to distribute Flava Works' films.  Desmond offered to do business with 1 Distribution if they stopped distributing Flava Works films.  These statements were false, and made knowing they were false or with willful disregard for the falsity of the statements, and made with malicious intent to harm the business reputation of Flava Works and Bleicher, and therefore constitute slander per se.

57.     Upon information and belief, on or about August 30, 2005 Flava Works' video distributor, 1 Distribution, who was party to a written distribution agreement with Flava Works with respect to the film Dorm Life 7, as well as Sam Manning, received a "cease and desist" letter from Plaintiff and Desmond threatening 1 Distribution and Manning with liability for contributory infringement upon distribution of the film "Dorm Life 7 Hot and Creamy".  Upon information and belief, Desmond continued to make threatening and harassing calls to Manning with willful disregard for the truth of the assertions made, solely to harass and intimidate, and for the sole purpose of inflicting harm on Flava Works, over a course of several weeks.  As a result of the threats and intimidation, 1 Distribution did not release for distribution the film "Dorm Life 7 Hot & Creamy", depriving Flava Works of valuable property rights and interfering with Flava Works' business and contractual relations.

58.     Upon information and belief, thereafter, to further harass, embarrass, intimidate and to use the court system for anti-competitive business practices, Plaintiff filed the First Amended Complaint, naming as a Defendant 1Distribution, interfering with the business relationship and contracts between 1Distribution and Flava Works, causing Flava Works to have to defend and indemnify 1Distribution, and costing Flava Works additional legal fees and costs, as well as other damages and expenses.

59.     Flava Works' use of the tag line Hot and Creamy is in connection with a gay black film; whereas Plaintiff's use of the tag line Hot and Creamy is in connection with a gay blatino film.  Gay black films and gay blatino films are separate and distinct niches of the gay adult film market; thus Defendant's product does not compete against Plaintiff's product.

60.     Flava Works use of the tagline Hot and Creamy to describe a gay black film neither is intended nor is likely to cause confusion, mistake or deception among the relevant trade and public with Plaintiff's gay blatino film.  The alleged danger of consumer deception or confusion is not a legitimate concern.

61.     Thugporn Platinum Series Hot and Creamy has not acquired secondary meaning with the general consuming public.  Consumers do not associate the term Hot and Creamy with the Plaintiff.  Therefore, Hot & Creamy is not entitled to trademark

protection as alleged in the complaint.  Additionally, Plaintiff filed a trademark for the Design of Hot & Creamy which is not mimicked on the Flava Works product, and the trademark filing was made after the law suit, as further evidence  a bad faith intention. The USPTO has not ruled on the mark and is not expected to do so for a minimum of three (3) months from now, therefore, claims related to the federal mark, as a registered mark are premature, and Plaintiff therefore lacks standing to sue at this time.

62.     Flava Works has incurred extensive advertising expenditures and publicity for its film Dorm Life: Hot and Creamy.  Flava Works' film has also received unsolicited media coverage and favorable press.

63.     Flava Works has not attempted to pawn off Dorm Life 7: Hot and Creamy as Plaintiff's product: Thugporn Platinum Series Hot and Creamy.  Rather, Flava Works contends  that to the extent the films are even comparable, Dorm Life 7: Hot and Creamy is superior to Plaintiff's film in production quality and novelty.

64.     Third-Party Defendants have repeatedly engaged in unfair competition by waging merit-less, litigious attacks against its perceived competitors, and forcing them out of the gay adult entertainment production business, including Enrique Cruz  and thugporn.tv, for the purpose of ultimately dominating the market.

## COUNT I – TRADEMARK AND TRADE DRESS INFRINGEMENT

65.     Defendants repeat and reallege their responses to Paragraphs 1 through 64 of the Answer with the same force and effect as though the same has been fully set forth at length herein.

66.     Defendants deny the allegations in Paragraphs 26 and 27 of the Complaint.

67.     Defendants are entitled to judgment as a matter of law as to Count I, Plaintiff's alleged mark is not entitled to protection, and Plaintiff has not by its Complaint sufficiently plead otherwise, because the alleged mark is generic, merely descriptive, not an indication of the source of goods (attributed to Thugporn Platinum Series), and has not achieved secondary meaning, a required element of this cause of

action, and for such and other reasons contained in this Answer, its Defenses and Counterclaims.

## COUNT II – FALSE DESIGNATION OF ORIGIN

68.      Defendants repeat and reallege their responses to Paragraphs 1 through 67 of the Answer with the same force and effect as though the same has been fully set forth at length herein.

69.      Defendants deny the allegations in Paragraphs 29 and 30 of the Complaint.

70.      Defendants are entitled to judgment as a matter of law as to Count II, Plaintiff's alleged mark is not entitled to protection, and Plaintiff has not by its Complaint sufficiently plead otherwise, because the designation of origin for the alleged product is in fact Thugporn Platinum Series not "Hot & Creamy", therefore, the designation of source of Dorm Life is not false compared to Thugporn, and for such and other reasons contained in this Answer, its Defenses and Counterclaims.

## COUNT III – COMMON LAW TRADEMARK INFRINGEMENT
## AND UNFAIR COMPETITIONS

71.      Defendants repeat and reallege their responses to Paragraphs 1 through 70 of the Answer with the same force and effect as though the same has been fully set forth at length herein.

72.      Defendants deny the allegations in Paragraph 32 of the Complaint.

73.      Defendants are entitled to judgment as a matter of law as to Count III, Plaintiff's alleged mark is not entitled to protection, and Plaintiff has not by its Complaint sufficiently plead otherwise, for such reasons as are contained in this Answer, its Defenses and Counterclaims.

## FIRST DEFENSE

74.      Defendants repeat and reallege their responses to Paragraphs 1 through 73 of the Answer with the same force and effect as though the same has been fully set forth at length herein.

75.      The Court lacks personal jurisdiction over Defendants Phillip Bleicher and Devin Wiley by reason of due process grounds because Plaintiff failed to allege in the Complaint any contacts between Defendant Bleicher or Wiley, a resident of Illinois,

and the State of New York. The Court lacks personal jurisdiction over Defendant 1Distribution by reason of due process grounds because Plaintiff failed to allege in the Complaint sufficient minimum contacts between 1Distribution, a resident of California, and the State of New York. Plaintiff failed to allege any action by Defendant Bleicher or Wiley sufficient to name him individually in the action, and therefore the Complaint must be summarily dismissed against Defendant Bleicher and Wiley. The Court lacks subject matter jurisdiction over this matter as there is no valid dispute to support the Plaintiff's Complaint as this is a collusive law suit. Venue is improper in this matter, convenience and fairness dictates venue is proper in Illinois, where the Defendant is located, not New York, where the Plaintiff claims to be located.

## SECOND DEFENSE

76. Defendants repeat and reallege their responses to Paragraphs 1 through 75 of the Answer with the same force and effect as though the same has been fully set forth at length herein.

77. The Complaint fails to state a claim upon which relief can be granted.

## THIRD DEFENSE

78. Defendants repeat and reallege their responses to Paragraphs 1 through 77 of the Answer with the same force and effect as though the same has been fully set forth at length herein.

79. Plaintiff's claims are barred, in whole or in part, by the doctrines of waiver, estoppel, and unclean hands.

## FOURTH DEFENSE

80. Defendants repeat and reallege their responses to Paragraphs 1 through 79 of the Answer with the same force and effect as though the same has been fully set forth at length herein.

81. Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands because Plaintiff instituted this lawsuit in furtherance of a pattern of unfair competition, harassment, extortion, fraud, and interference with commerce in violation of federal and state antitrust statutes, RICO statutes, trademark and copyright statutes, against Defendant.

## FIFTH DEFENSE

82.    Defendants repeat and reallege their responses to Paragraphs 1 through 81 of the Answer with the same force and effect as though the same has been fully set forth at length herein.

83.    Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands because Plaintiff instituted this lawsuit based on misrepresentations, including without limitation, Plaintiff participated in the theft of confidential information from Defendant upon which Plaintiff relied for the creation of Plaintiff's competitive business.

## SIXTH DEFENSE

84.    Defendants repeat and reallege their responses to Paragraphs 1 through 83 of the Answer with the same force and effect as though the same has been fully set forth at length herein.

85.    Plaintiff is not entitled to maintain this suit or to assert infringement of a trademark, because the name "Hot and Creamy" is merely descriptive of the contents of the video upon which the title appears. No secondary meaning indicating the origin of goods has been acquired by plaintiff. The name, being merely descriptive, is in the public domain.

## SEVENTH DEFENSE

86.    Defendants repeat and reallege their responses to Paragraphs 1 through 85 of the Answer with the same force and effect as though the same has been fully set forth at length herein

87.    The difference in sound and meaning between the two products, respectively, Thugporn Platinum Series Hot & Creamy and Cocodorm Dorm Life 7: Hot and Creamy is so unmistakable, and the distinction in appearance is so manifestly apparent, that any question of confusion in the minds of the normal purchasing public with regard to the source or origin of the products is nullified.  *See* Exhibit A.

## EIGHTH DEFENSE

88.    Defendants repeat and reallege their responses to Paragraphs 1 through 87 of the Answer with the same force and effect as though the same has been fully set forth at length herein

89.     Plaintiff's purported trademark "Hot & Creamy" is a common generic term when applied to entertainment services, namely adult videos. Therefore, the mark is not entitled to protection.

90.     The highly discerning purchaser of these products confirms that no actual confusion of the buying public between products exist or can exist in favor of Plaintiff.

91.     Defendant has been manufacturing and selling videos, including the series of Dorm Life videos, Dorm Life 1 through Dorm Life 6, successfully before Plaintiff entered into the video business. Defendant's products have been commercially successful, and defendant has established an independent good will in the adult entertainment field. With such established good will, little likelihood exists that continued use by defendant of its mark "Dorm Life 7: Hot & Creamy" will tarnish plaintiff's purported mark "Thugporn Platinum Series; Hot & Creamy".

92.     Plaintiff has alleged in the Complaint that it will suffer immediate irreparable damage if the preliminary injunction is not granted. However, since no actual competition between specific products exists, and Plaintiff does not have a valid claim for a trademark in the generic, merely descriptive terms, the alleged immediate irreparable damage is not so probable as to entitle plaintiff to injunctive relief.

93.     If the preliminary injunction is granted, defendant will suffer great immediate harm from having to withdraw its existing commercial inventory of videos from the market.

## NINTH DEFENSE

94.     Defendants repeat and reallege their responses to Paragraphs 1 through 93 of the Answer with the same force and effect as though the same has been fully set forth at length herein

95.     Even if defendant should be found to be infringing the trademark of plaintiff, no profits or other damages could be recovered by plaintiff. Neither the words nor the abbreviations nor the symbols specified by 15 U.S.C.A. §1111 for indicating registration of a trademark were displayed with plaintiff's mark as used. Further, defendant had no actual notice of the registration of the mark, nor does plaintiff allege actual notice.

WHEREFORE, Defendants request the Court dismiss all of the causes of action asserted by plaintiff herein and order such further relief as the Court deems just and proper.

## COUNTERCLAIMS

## THIRD PARTY COMPLAINT

## COUNT I – CIVIL ASSAULT

96.     Defendants repeat and reallege the allegations contained in Paragraphs 1 through 95 of the Answer, with the same force and effect as though the same has been fully set forth at length herein.

97.     The acts of Desmond as described above constitute an assault upon Bleicher in that Desmond intentionally attempted to injure Bleicher or commit a battery upon Bleicher, and further that Desmond's acts represented a grievous affront to Bleicher.

98.     Desmond's acts were intentional, reckless, and unwarranted, and without any just cause of provocation, and Desmond knew, or should have known, that his actions were without the consent of Bleicher; Bleicher believed Desmond's threat to be true and was in fear as a result of the acts of Desmond.

99.     As a sole, direct and proximate result of Desmond's aforementioned acts, Bleicher sustained severe emotional injuries and mental pain resulting from Desmond's assault, without Bleicher's contribution to the damages.

100.    Defendant has been damaged in excess of the sum of $1,000,000.00 and such punitive damages in such amount as the trier of fact may deem just and equitable.

## COUNT II – SLANDER AND DEFAMATION

101.    Defendants repeat and reallege the allegations contained in Paragraphs 1 through 100 of the Answer, with the same force and effect as though the same has been fully set forth at length herein.

102.    Third-Party Defendants's aforesaid activities constitute slander, libel, defamation, and slander per se, to wit, Third-Party Defendants has repeatedly slandered, libeled, and defamed Flava Works' reputation and Bleicher in his professional capacity

by making false statements regarding copyright and trademark infringement. Work ethics, deception and theft, causing Flava Works, Lukebaby and Bleicher damages.

103.     The conduct and statements of Third-Party Defendants regarding Defendant's rights in Hot & Creamy, as alleged above, are disparaging and defamatory because they willfully and without justification or privilege convey to other persons false statements that Defendant, without limitation, stole information and infringed on intellectual property.

104.     These statements have a tendency to injure Defendant in its occupation because as a proximate result of Third-Party Defendants's publication of these statements, prospective and past models have been deterred from participating in the above-described business goods and from otherwise dealing with Defendant, Defendant's film is not being distributed as planned and Defendant has accordingly suffered injury to its business and pecuniary loss in an amount to be determined at trial.

105.     Third-Party Defendants's statements, as set forth above, were oppressive, fraudulent or malicious, such that both compensatory and punitive damages are warranted.

## COUNT III – DISCLOSURE OF TRADE SECRETS

106.     Defendants repeat and reallege the allegations contained in Paragraphs 1 through 105 of the Answer, with the same force and effect as though the same has been fully set forth at length herein.

107.     Prior to being employed by Defendant, Third-Party Defendants and/or Maisonette had no knowledge of Defendant's secret or confidential information, processes, or the production methods utilized by Defendant in the production of adult videos, among other things.

108.     Upon information and belief, during and subsequent to employment with Defendant, Maisonette knowingly and willfully disclosed such trade secrets and confidential information belonging to Defendant to Third-Party Defendants.

109.     Such trade secrets and confidential information are a primary asset of Defendant, and Defendant has carefully guarded these trade secrets and confidential information, and there has been no public disclosure of these trade secrets by Defendant.

110. By reason of the willful and knowing disclosure by Maisonette of Defendant's trade secrets and confidential information, Defendant has been and, unless Third-Party Defendants is enjoined from further making such disclosures, will continue to be greatly and irreparably harmed and injured, and will suffer the threat of loss of competitive advantage, income, profits, and customers, without having an adequate remedy at law.

111. Third-Party Defendants, Desmond and Maisonette have appropriated and used, for its benefit, the confidential information and secrets of Defendant, including those relating to its production of adult videos and procurement of models without Defendant's consent, and in violation of Defendant's rights. Such appropriation and use by Third-Party Defendants, Desmond and Maisonette has been, and will be, of great value to Third-Party Defendants, Desmond and Maisonette, and has resulted, and will result, in their unjust enrichment.

112. Defendant's competitive advantage in the development, manufacture, and marketing of its products, will be seriously impaired, and Defendant will therefore suffer great and irreparable injury without having an adequate remedy at law, unless the unlawful invasion by Third-Party Defendants, Desmond and Maisonette of Defendant's rights in the above-described confidential information and secrets is enjoined. Defendant has no adequate remedy available at law.

## COUNT IV – FRAUD

113. Defendants repeat and reallege the allegations contained in Paragraphs 1 through 112 of the Answer, with the same force and effect as though the same has been fully set forth at length herein.

114. Maisonette knowingly and intentionally induced and caused Lukebaby to employ Maisonette and further knowingly and intentionally induced and caused Lukebaby to divulge trade secrets and knowingly and intentionally made false statements and omissions of material fact, including his relationship with Desmond and creation of competing business, to Lukebaby, by making statements offered as fact, not opinion, with the intent that they induce Lukebaby to act upon the false and misleading statements, upon which Lukebaby reasonably relied to its detriment.

115.     Third-Party Defendants, Desmond's and Maisonette's aforesaid activities constitute common law fraud in the State of Illinois, including without limitation the mailing of a meritless cease and desist letter, which were the direct and proximate cause of Defendant damages, in an amount to be determined at trial.

## COUNT V – BREACH OF IMPLIED COVENANT
## OF GOOD FAITH AND FAIR DEALING

116.     Defendants repeat and reallege the allegations contained in Paragraphs 1 through 115 of the Answer, with the same force and effect as though the same has been fully set forth at length herein.

117.     Maisonette owed a duty of good faith and fair dealing to Defendant, such duty being implied in the employment and work for hire contracts between Maisonette and Defendant and in their two-year course of dealing, and by Defendant's justifiable reliance on Third-Party Defendants' repeated representations during that time. The duty of good faith and fair dealing required Third-Party Defendants to refrain from taking any action to start a directly competitive business with Defendant, using confidential and privileged information gained from Defendant.

118.     Maisonette acted in bad faith by engaging in inherently deceptive conduct in a calculated attempt to circumvent and defeat the terms and purpose of the above-mentioned agreements.

119.     As a direct and proximate result of Third-Party Defendants, Maisonette and Desmond's conduct alleged in this Answer, Defendant has been damaged and will be damaged in an amount to be proven at trial.

## COUNT VI – BREACH OF FIDUCIARY DUTY

120.     Defendants repeat and reallege the allegations contained in Paragraphs 1 through 119 of the Answer, with the same force and effect as though the same has been fully set forth at length herein.

121.     While acting as agent for Defendant, Maisonette was subject to a duty requiring that he avoid promoting interests contrary to those of Defendant, which Maisonette breached, causing damage to Defendant.

## COUNT VII – INTERFERENCE WITH BUSINESS OPPORTUNITY

122.    Defendants repeat and reallege the allegations contained in Paragraphs 1 through 121 of the Answer, with the same force and effect as though the same has been fully set forth at length herein.

123.    Third-Party Defendants, Desmond and Maisonette's aforesaid activities constitute tortuous and willful interference with a business opportunity, to wit, Third-Party Defendants, Desmond and Maisonette started a business based on access to Defendant's confidential information, obtained a competitive web address in advance of Defendant launching their website, and instituted Trademark actions to force Defendant out of the business, unfairly and fraudulently competed with Defendant for vindictive reasons, and solicited models known to be under exclusive contract to breach their contracts with Defendant and work for Third-Party Defendants, Desmond and Maisonette; and as a direct and proximate result of Third-Party Defendants, Desmond and Maisonette's actions, Defendants have suffered direct, consequential, and proximate damages in an amount to be proven at trial.  Third-Party Defendants, Desmond and Maisonette willingly, knowingly, and maliciously planned to destroy Defendant's business opportunities.

## COUNT VIII – INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE

124.    Defendants repeat and reallege the allegations contained in Paragraphs 1 through 123 of the Answer, with the same force and effect as though the same has been fully set forth at length herein.

125.    Third-Party Defendants, Desmond and Maisonette's aforesaid activities constitute tortuous and willful interference with a business opportunity, to wit, including without limitation, Third-Party Defendants, Desmond and Maisonette, after producing a movie entitled Pitbull Platinum Series: Hot & Creamy utilizing a model hired in violation of an exclusive contract with Defendant Lukebaby,  instituted the present meritless lawsuit, and issued a cease and desist demand to 1 Distribution and filed suit against 1Distribution, for the purpose of interfering with the prospective business advantage between Lukebaby and 1 Distribution; and Lukebaby and the model, and as a direct and proximate result of Third Party Defendants, Desmond and Maisonette's action, Lukebaby has suffered direct, consequential, and proximate damages in an

amount to be proven at trial. Third-Party Defendants, Desmond and Maisonette willingly, knowingly, and maliciously planned to destroy Defendant's prospective business advantage for their own gain and in an attempt to monopolize the industry.

## COUNT IX –UNFAIR COMPETITION

126. Defendants repeat and reallege the allegations contained in Paragraphs 1 through 125 with the same force and effect as though the same has been fully set forth at length herein.

127. Third-Party Defendants's aforesaid activities constitute unfair competition under the common law of the State of Illinois and/or California and such other State as this court deems appropriate to this action.

128. Third-Party Defendants started a business based on access to Defendant's confidential and proprietary information, poached Lukebaby's models, and instituted Trademark actions to force Defendant out of the business, unfairly and fraudulently competing with Defendant for vindictive reasons. Third-Party Defendants's acts are willful and malicious and constitute unfair competition for which Third-Party Plainitiff's are entitled to receive damages.

129. Defendant has suffered and continues to suffer damages, including, without limitation, the loss of sales and profits Defendant would have made but for Third-Party Defendants's actions, in an amount to be proven at trial. Defendant has also suffered and continues to suffer irreparable and incalculable injury to its business reputation, good will, and to the integrity of its trademark and copyright. Defendant's remedies at law cannot adequately compensate for the ongoing injuries threatened by Third-Party Defendants's continuing conduct.


WHEREFORE, Defendants request that Court enter a judgment against Plaintiff and Third Party-Defendants:

1. For a temporary restraining order, preliminary injunction, and permanent injunction against Third-Party Defendants, their officers, agents, servants, representatives, employees, attorneys, parents, subsidiaries, related companies, partners, successors, predecessors, assigns, and all persons acting for, with, by, through, or under

them, and each of them, restraining them from issuing cease and desist letters or other public statements disparaging Bleicher, Flava Works and/or Lukebaby;

2. For statutory damages;

3. For punitive damages;

4. For disgorgement of all gains, profits, and advantages derived by Third-Party Defendants from their acts of unfair competition and other violations of law;

5. For monetary damages according to proof at trial sustained by Defendant as a result of Third-Party Defendants's unlawful acts alleged here;

6. For treble damages;

7. For all costs and expenses, including, without limitation, reasonable attorney's fees incurred by Defendants and Third-Party Plaintiffs in this action;

8. For prejudgment interest at the maximum legal rate; and

9. For such other and further relief as the court deems just and proper.


Dated: January 25, 2006          Respectfully Submitted,
       New York, New York

                                 /s/ Havona Madama

                                 Havona Madama, Esq. (HM 4711)
                                 Madama Griffitts LLP
                                 450 Park Avenue South
                                 Sixth Floor
                                 New York, NY 10016
                                 (212) 209-5450
                                 (212) 209-5460  FACSIMILE

                                 Attorney for Defendants
                                 Attorney for Third Party Plaintiffs



