Havona Madama (HM 4711)
Madama Griffitts, LLP
450 Park Avenue South, Sixth Floor
New York, New York 10017
(212) 209-5450 telephone / (212) 209-5460 telefax

Attorneys for Defendants and Third Party Plaintiffs

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------------x

PITBULL PRODUCTIONS, INC.,                                     :

                                                              :

                                            Plaintiff, :

                                                              : 1:05-cv-7593 (NRB)

                    -against-                                  :

                                                              :

PHILIP BLEICHER AND DEVIN WILEY INDIVIDUALLY AND              :
D/B/A FLAVA WORKS, 1DISTRIBUTION,
                                                              :
                                    Defendants.
-------------------------------------------------------------------------------x
-------------------------------------------------------------------------------x
PHILIP BLEICHER AND DEVIN WILEY INDIVIDUALLY,                 :
FLAVAWORKS, LUKEBABY PRODUCTIONS,
                                                              :
                            Third Party Plaintiffs,
                                                              :
                    -against-
                                                              :

PITBULL PRODUCTIONS, INC., EDWARD DESMOND, EDWARDO            :
MILITELLO, MAXON PRIVATE BANKING, MAXON CAPITAL
CORPORATION, DESMOND ENTERPRISES, AND ANDRE MAISONETTE       :
A/K/A JALIN FUENTES,

                            Third Party Defendants.          :

-------------------------------------------------------------------------------x

**DEFENDANT'S MEMORANDUM OF LAW**
**IN OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS**

**MADAMA GRIFFITTS, LLP**
**450 PARK AVENUE SOUTH, SIXTH FLOOR**
**NEW YORK, NEW YORK 10017**
**(212) 209-5450**

1

Electronically Submitted

{10058.005 00002909 v.1}

TABLE OF CONTENTS

**TABLE OF AUTHORITIES**                                                                    **3**

**INTRODUCTION**                                                                            **4**

**PROCEDURAL POSTURE**                                                                      **4**

**FACTUAL BACKGROUND**                                                                      **4**

**ARGUMENT**                                                                                **5**

**THE SETTLEMENT AGREEMENT, INCLUDING THE MUTUAL GENERAL RELEASES,**

**MUST BE INTERPRETED UNDER PRINCIPLES OF CONTRACT LAW REMOVING THE**

**ISSUE FROM A RES JUDICATA ANALYSIS.**                                                     **5**

    *Res Judicata* **Did Not Attach To Third Party Claims**                           5

    **Parties did not settle "on the merits"**                                             5\\

    **Unambiguous Plain Language of Settlement Agreement sets forth the limitations on claim and**

    **issue preclusion**                                                                   6

    **Order to Discontinue was not "with prejudice"**                                      8\\

**CONCLUSION**                                                                              **8**

2

**Table of Authorities**

Accolla v. State of New York, 1987 U.S. Dist. LEXIS 11197, 8 (S.D.N.Y.  Dec 4, 1987). ........................8

Conley v. Gibson, 355 U.S. 41, 45-6, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)......................................4

Gant v. Wallingford Bd. Of Educ., 69 F.3d 669, 673 (2d Cir. 1995). ............................................4

Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998). ............................................4

Greenberg v. Bd. of Governors of Fed. Reserve Sys., 968 F.2d 164, 168 (2d Cir 1992) ............5

Hostcentric Technologies, Inc. v. Republic Thunderbolt, LLC, 2005 WL 1377853 (S.D.N.Y. June 9, 2005)

........................................................................................................................................6

Hudson v. IRS, 2004 U.S. Dist. LEXIS 23742, 2004 WL 1006266, at *7 (N.D.N.Y. Mar. 25, 2004) ........6

Huertas v. East River Housing Corp., 992 F.2d 1263, 1266 (2d Cir. 1993) .................................7

LeMay v H.W. Keeney, Inc., 124 AD2d 1026, 1027, lv denied 69 NY2d 607) ............................7

Nottenberg v. Wilber, 985 Co., 160 A.D.2d 574, 575, 554 N.Y.S.2d 217 ....................................5

Red Ball Interior Demolition Corp. v. Palmadessa, 173 F.3d 481, 484 (2d Cir.1999).................7

Rule 41(a)(1) of the Federal Rules of Civil Procedure .................................................................8

Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 505; 121 S. Ct. 1021,1026-7; 149 L. Ed. 2d

32,41 (2000) ..................................................................................................................5

Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., No. 04-3528, 2005 WL 1076552 at *1 (2d Cir. May 6, 2005) 7

White v. United States Postal Serv., 2005 U.S. Dist. LEXIS 6067 (E.D.N.Y. 2005 Feb 16, 2005)............6

Electronically Submitted

{10058.005 00002909 v.1}

## INTRODUCTION

Plaintiff's motion to dismiss the Third Party Complaint misses the mark by its reliance on the doctrine of *res judicata*. First, there must be a final judgment on the merits before *res judicata* attaches to a claim. Second, it is well settled that an order of discontinuance is deemed without prejudice unless specifically stated otherwise in the Order or Settlement Agreement. Third, it is black letter law that settlement agreements are contracts and must therefore be construed according to general principles of contract law. Fourth, the terms of the attached and incorporated Exhibit B, Mutual General Release ("Limited Release") to the Settlement Agreement set forth the limited releases intended by and agreed to by the Parties. Fifth, the Settlement Agreement specifically excludes from the release the claims and averments Plaintiff seeks to dismiss with its motion. Finally, the motion to dismiss must be denied in its entirety as it seeks relief which can not be granted as a matter of law.

## PROCEDURAL POSTURE

On a motion to dismiss the allegations in the Third Party Complaint are accepted as true. Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998). All reasonable inferences must be drawn in the Defendants/Third Party Plaintiffs favor. Gant v. Wallingford Bd. Of Educ., 69 F.3d 669, 673 (2d Cir. 1995). A motion to dismiss should only be granted if it appears from the face of the Third Party Complaint, that the Third Party Plaintiff's can not prove any set of facts that would support their claims of entitlement to relief. Conley v. Gibson, 355 U.S. 41, 45-6, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## FACTUAL BACKGROUND

The Plaintiff previously filed an action against Phillip Bleicher individually and d/b/a LBPI a/k/a Lukebaby Productions, Inc. ("Bleicher") and Next Magazine. On March 3, 2004 Plaintiff filed the Complaint Docket No. 04-1710 (RMB), followed by an Amended Complaint on March 19, 2004. On May 17, 2004 Bleicher filed an Answer to the Amended Complaint, followed by an Amended Answer to the Amended Complaint on July 8, 2004. Pursuant to a motion for leave to amend, Plaintiff filed the Second Amended Complaint on July 13, 2004. Before Bleicher filed an Answer to the Second Amended Complaint, the Parties entered into that certain Settlement Agreement attached as EXHIBIT A, on August 19, 2004.

The Settlement Agreement was fully negotiated between the Parties, by and through their attorneys, the same attorneys, who represent the respective parties in the present action. On August 6, 2004 Plaintiff attorney forwarded the first draft to Bleicher's attorney, a copy of which is attached hereto as EXHIBIT B. Bleicher's attorney amended the Settlement Agreement, specifically amending

4

paragraph 9 (later to become paragraph 16) with respect to execution of general mutual releases and noting the issue for further discussion with opposing counsel. Attached hereto as <u>EXHIBIT C</u> is the red-lined draft of the amended agreement.

On August 14, 2004 Plaintiff counsel forwarded another revised draft, attached hereto as EXHIBIT D, wherein Plaintiff made changes to paragraph 16 (formerly paragraph 9), and attached was an email authorizing Bleicher's counsel to make changes to paragraph 16, specifically stating "[y]ou may also change the general releases paragraph 16 to include such language, if you prefer." Thereafter, Bleicher's counsel produced the final draft with numerous amendments, including the addition of the attached and incorporated Exhibit A and Exhibit B to the Settlement Agreement, which specifically defined the term General Mutual Release by incorporating Exhibit B into paragraph 16 of the Settlement Agreement, and thereby limited the scope of the releases granted by Defendant. Plaintiff reviewed and accepted the offered changes executing the final draft as set forth in <u>EXHIBIT A.</u>

ARGUMENT

I.    **THE SETTLEMENT AGREEMENT, INCLUDING THE MUTUAL GENERAL RELEASES, MUST BE INTERPRETED UNDER PRINCIPLES OF CONTRACT LAW REMOVING THE ISSUE FROM A RES JUDICATA ANALYSIS.**

a.    ***Res Judicata* Did Not Attach To Third Party Claims**

Plaintiff in its motion admits that the first element in proving the defense of *res judicata* requires the Plaintiff prove that the previous action involved adjudication on the merits. Plaintiff's reliance upon <u>Nottenberg v. Wilber</u>, 985 Co., 160 A.D.2d 574, 575, 554 N.Y.S.2d 217, for the proposition that the instant settlement agreement constituted a settlement on the merits, is misguided. Plaintiff's argument assumes, without regard for the applicable case law, that the Settlement Agreement entered into by the parties constitutes a settlement on the merits.

However, as is more fully set forth below, the Settlement Agreement and Order to Discontinue are both silent as to whether there is a settlement "on the merits" or a dismissal "with prejudice", therefore, the matter is deemed discontinued without prejudice. The Supreme Court, in <u>Semtek Int'l Inc. v. Lockheed Martin Corp.</u>, 531 U.S. 497, 505; 121 S. Ct. 1021,1026-7; 149 L. Ed. 2d 32,*41 (2000),* clarifies the issue succinctly, "'adjudication upon the merits' is the opposite of a 'dismissal without prejudice'".

b.    **Parties did not settle "on the merits"**

The preclusive effect of a settlement is measured, not by the doctrine of *res judicata* but*,* by the actual intent of the parties to the settlement, <u>Greenberg v. Bd. of Governors of Fed. Reserve Sys.</u>, 968 F.2d 164, 168 (2d Cir. 1992), which is determined from the language of the settlement agreement, which

5

is attached hereto and incorporated herein as Exhibit A.  White v. United States Postal Serv., 2005 U.S. Dist. LEXIS 6067 (E.D.N.Y. 2005 Feb 16, 2005) *citing,*  Hudson v. IRS, 2004 U.S. Dist. LEXIS 23742, 2004 WL 1006266, at *7 (N.D.N.Y. Mar. 25, 2004). In this matter, the language of the settlement agreement clearly indicates there was no intent for the agreement to be a settlement on the merits.

Simply, there is no statement in the Settlement Agreement that indicates the dismissal of claims "with prejudice" or settlement "on the merits".  The Settlement Agreement is silent as to the issue of preclusion, except as is specifically set forth in Exhibit B, the Limited Release.  Also, there was no adjudication of the merits of any of the claims by any judicial officer.  The parties simply agreed, prior to completing discovery in the matter, to settle their claims without assigning fault and they executed a Limited Release to that effect.   The Court must read the contract as it was agreed to by the parties to ascertain what, if any, claims were precluded by the Limited Release.

Where the parties enter into a contract the terms of that contract govern the disposition of the claims, not the doctrine of *res judicata*.  Simply, by entering into the Settlement Agreement the parties agreed to settle their dispute without any regard to the merits or fault of any party to the action, therefore, no claim was adjudicated on its merits

### c.  Unambiguous Plain Language of Settlement Agreement sets forth the limitations on claim and issue preclusion

The final settlement of all potential claims between the parties was not intended and is clearly not agreed to in the Settlement Agreement because Exhibit B, the Limited Release, unambiguously sets forth limitations on the release of claims.  Paragraph 16 states in pertinent part:

> Such General Mutual Releases shall be executed contemporaneously with the execution of this Stipulation by the parties (annexed hereto and incorporated herein as Exhibit B is the General Mutual Release).
>
> […] Plaintiff Pitbull releases and forever discharges Defendants Philip Bleicher individually and d/b/a LBPI a/k/a Lukebaby Productions, Inc. and their parents, subsidiaries, predecessors, divisions, committees, affiliates, successors and assigns …from all actions …which …Plaintiff … may have … from the beginning of the world to the date of this Stipulation of Settlement arising out of or in any way related to the claims and pleading of the Second Amended Complaint.
>
> […] Defendant releases and forever discharges Plaintiff, its parents, subsidiaries, predecessors, divisions, committees, affiliates, successors and assigns … from all actions …which …Plaintiff … may have … from the beginning of the world to the date of this Stipulation of Settlement arising out of or in any way related to the claims and pleading of the Second Amended Complaint (*emphasis added*).

It is black letter law in the Second Circuit that settlement agreements are contracts and must therefore be construed according to general principles of contract law.  Hostcentric Technologies, Inc. v.

Republic Thunderbolt, LLC, 2005 WL 1377853 (S.D.N.Y. June 9, 2005), *quoting* Red Ball Interior Demolition Corp. v. Palmadessa, 173 F.3d 481, 484 (2d Cir.1999); accord, e.g., Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., No. 04-3528, 2005 WL 1076552 at *1 (2d Cir. May 6, 2005).   If a contract is clear, courts must take care not to alter or go beyond the express terms of the agreement, nor to impose limitations or obligations upon the parties not mandated by the unambiguous terms of the agreement itself. Red Ball, 173 F. 3d at 484, *see also* Huertas v. East River Housing Corp., 992 F.2d 1263, 1266 (2d Cir. 1993).

Defendant (who, incidentally, is not defined in the Limited Release) did not release the agents or employees of Plaintiff from any actions, therefore the Third Party Defendants can not rely upon *res judicata*.  Simply, a contract cannot be read to include a party that is not clearly named or included in that contract.  Here, the contract is the Settlement Agreement, which by its terms incorporates the plain language of the Limited Release.  *Id.* In the plain language of the Limited Release, Defendant released only the Plaintiff, who is a company, and its successor companies, not any individuals.  Conversely, Plaintiff released the individual Defendant and the corporate Defendants, and each of their successors and assigns.  Clearly, the parties intended only to release the named parties to the lawsuit, not any incidental third parties.

The intent of the parties is dictated by the language employed in the release, and the fact that one party may have intended something different is irrelevant (*see*, LeMay v H.W. Keeney, Inc., 124 AD2d 1026, 1027, *lv denied* 69 NY2d 607).   Defendants, with the prior knowledge of Plaintiff, drafted Exhibit B to the Settlement Agreement and directing specific attention to the Release with the inclusion of the language in paragraph 16.  Simply, in contract terms, the attachment and incorporation of Exhibit B acted as a counteroffer to the previous draft agreement.  When the Plaintiff agreed, and subsequently signed and submitted the agreement, they accepted Defendant's offer and agreed to all terms contained in the Settlement Agreement.  Clearly the parties involved are sophisticated enough to understand that the Settlement Agreement is a contract and failure to identify the limitations of specific provisions prior to executing the same, does not relieve the Plaintiff of the terms of the agreement.  Plaintiff had a full and fair opportunity to review the Settlement Agreement and make changes thereto, the Plaintiff should not now be rewarded for failing to review the document.

Similarly, Defendant did not release any potential counterclaims which could have been made in response to the Second Amended Complaint.  At the time of executing the Settlement Agreement, Defendant had not filed an Answer to the Second Amended Complaint and therefore executed a Limited Release which simply referred to the Plaintiff's claims contained in the Second Amended Complaint, thereby specifically excluding any potential counterclaims Defendant might have against Plaintiff, Maisonette or Desmond.  The Parties executed very specific Limited Releases and did not dismiss the

7

matter with prejudice or settle the matter on the merits, therefore, the doctrine of *res judicata* does not apply to the Third Party Complaint filed in the present action.

> **d.  Order to Discontinue was not "with prejudice"**

The Order to Discontinue is silent as to whether the case was discontinued with or without prejudice, referring the reader to the terms of the Settlement Agreement.  On September 7, 2004, Hon. Richard M. Berman, U.S.D.J., signed an Order of Discontinuance, which states in pertinent part:

> Based on the Stipulation of Settlement singed by Plaintiff on August 19, 2004 and Defendant on August 23, 2004 and the letter from the Plaintiff dated August 26, 2004 advising the Court that the parties have agreed upon terms from a settlement, it is hereby ORDERED, that the above-entitled action be, and the same hereby is, discontinued.

Rule 41(a)(1) of the Federal Rules of Civil Procedure states that unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice.  Unless otherwise stated, an order of discontinuance is discontinues the action without prejudice.  Accolla v. State of New York, 1987 U.S. Dist. LEXIS 11197, 8 (S.D.N.Y. Dec 4, 1987).  In the instant matter, *res judicata* does not bar the claims made in the Third Party Complaint because the discontinuance was without prejudice.

## II.             CONCLUSION

The parties entered into a negotiated settlement which included a Limited Release of some claims, as is clearly stated in the Settlement Agreement.  However, the claims and averments the Plaintiff seeks to dismiss with this motion are not precluded by the Settlement Agreement.  Even assuming, *arguendo*, the claims sought for dismissal were released, they were clearly not released with respect to Desmond and Maisonette, who were not parties to the prior action.   Specifically, the Limited Release does not include individuals not named in the action.  All of the claims which Plaintiff seeks to preclude are made against Desmond and Maisonette, and therefore, preclusion is improper.

Based on the foregoing, Defendants and Third Party Plaintiffs respectfully request that this Court deny Plaintiff's motion in its entirety.

Dated:  May 5, 2006                                 By: /s/Havona Madama
      New York, New York                        Havona Madama (HM 4711)
                                           Madama Griffitts, LLP
                                           450 Park Avenue South, Sixth Floor
                                           New York, New York 10017
                                           (212) 209-5450 telephone
                                           (212) 209-5460 telefax

                                           Attorney for Defendants and Third Party Plaintiffs

Electronically Submitted

{10058.005 00002909 v.1}

# EXHIBIT A

MADAMA GRIFFITTS LLP
16 WEST 19TH STREET 10TH FLOOR
NEW YORK NEW YORK 10011
——
TEL 212.209.5450
FAX 212.209.5460
madamagriffitts.com

August 26, 2004

Honorable Richard M. Berman
United States District Judge
United States District Court
For the Southern District of New York
40 Centre Street
Courtroom 706
New York, NY 10007

Re:    **Pitbull Productions, Inc. vs. Bleicher, et al.**
       **04 CV 1710 (RMB)**

Honorable Judge Berman:

This letter is to advise you that the parties in the aforementioned matter have executed a Stipulation of Settlement in advance of conducting discovery, a copy of which is annexed hereto.

You ordered this matter set for Trial on September 8, 2004. At this time, the parties will not require a trial in this matter.

Please also be advised that my offices are closed for holiday from August 30, 2004 to September 8, 2004 (as I previously indicated to the court). Obviously, I do not expect any issues with respect to the Stipulation, but in the event something should occur during those dates, I respectfully request that the court not schedule any hearings or other matters until such time as my firm returns from holiday.

The members of my firm will have little or no access to email or telephone service during those dates. Any inquiries should be directed to (212) 209-5462 or my cellular phone (917) 576-5621. Thank you in advance for your cooperation in this matter.

Sincerely,

Havona Madama

cc: Meredith & Keyhani, PLLC

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------x
PITBULL PRODUCTIONS, Inc.,                   :
                Plaintiff,                   :
       v.                   :                04 CV 1710 (RMB)
                       :
                       :                STIPULATION OF
Philip Bleicher individually                 :                SETTLEMENT
and d/b/a LBPI a/k/a Lukebaby                 :
Productions, Inc.  Next Magazine,            :
                Defendant.                   :
--------------------------------------------------------x


**RECITALS**

      1.     Pitbull Productions, Inc. ("Pitbull") is a company organized and registered

in Delaware, existing under the laws of Delaware with a place of business located at 200

East 116th Street, Suite 2N, New York, New York 10029.


      2.     Lukebaby Productions, Inc. ("Lukebaby") is a company organized and

registered in Illinois, existing under the laws of Illinois with a place of business located at

40 East Chicago, Suite 162, Chicago Illinois 60611.


      3.     Philip Bleicher ("Bleicher") is a natural person and the owner of

Lukebaby.


      4.     On March 2, 2004, Pitbull commenced a civil action in the United States

District Court for the Southern District of New York, Index No. 04 CV 1710 (RMB)

("the Federal Action") captioned "Pitbull Productions, Inc., v. Philip Bleicher

individually and d/b/a LBPI a/k/a Lukebaby Productions, Inc. and Next Magazine". The Federal Action is presently assigned to the Honorable Richard M. Berman and is presently pending.

5.      In the Second Amended Complaint, Pitbull alleges trademark and trade dress infringement, false designation of origin, trademark cybersquatting, common law trademark infringement and unfair competition, copyright infringement and trade secret misappropriation.

6.      In its answer, Lukebaby interposed Counter-Claims for trademark and trade dress infringement, false designation of origin, trademark cybersquatting, common law trademark infringement and unfair competition, copyright infringement, interference with business opportunity, slander and defamation, breach of implied covenant of good faith and fair dealing, breach of fiduciary duty and disclosure of trade secrets.

## TERMS

7.      Lukebaby and Bleicher fully warrant, agree and covenant that upon the execution of this Agreement, Lukebaby and/ or Bleicher shall, within seventy two (72) hours after execution of this Agreement, redirect websites www.thugporno.com and www.thugpornos.com to www.thugporn.com and within seven (7) business days after execution Lukebaby and/or Bleicher shall provide proof of transfer of ownership and registration, at plaintiffs expense, of the websites "www.thugporno.com", "www.thugpron.com" and "www.thugpornos.com" from Lukebaby to Pitbull. In the

2

event that paperwork is required from Pitbull to effectuate a transfer or redirect, the seventy two hour time frame to redirect and seven business days to provide proof of transfer of ownership shall be measured from receipt of required materials from Pitbull.

8.      Lukebaby and Bleicher fully warrant, agree and covenant that any entities controlled, owned or for which Lukebaby and/or Bleicher has an interest in now and in the future, will immediately completely cease and desist <u>forever</u> from any and all use of the "Thugporno" mark, the thugporno logo and any use that is confusingly similar to plaintiffs thugporn word mark and design marks (U.S. trademark applications, serial numbers 78337523, 78376524 and 78376333). Notwithstanding anything to the contrary contained herein, Pitbull acknowledges that LukeBaby and/or Bleicher produce DVD's some of which contain advertisements for www.thugporno.com on the DVD covers and Pitbull agrees that distribution of DVDs containing such advertisements shall not be deemed a breach of this Stipulation of Settlement.

9.      Lukebaby and Bleicher fully warrants, agrees and covenants that upon the execution of this Agreement, Lukebaby and Bleicher, its subsidiaries and assigns, shall not register any domain name containing variations of the word "thugporn".

10.     Pitbull fully warrants, agrees and covenants that any entities controlled, owned or for which Pitbull has an interest in now and in the future, will immediately completely cease and desist <u>forever</u> from registering or operating any domain name containing variations of Lukebaby and Bleicher domain names, including without

3

limitation cocodorm, cocostore, cocoboyz, mixitupboy, blockbusterthugs, thugsforsex, olatin, thugboy, boyhookup, and papicock, and Pitbull fully fully warrants, agrees and covenants that any entities controlled, owned or for which Pitbull has an interest in now and in the future, will immediately completely cease and desist <u>forever</u> from utilizing any of the competitive domain names registered by Pitbull (annexed hereto and incorporated herein by reference as Exhibit A is a list of domain names purchased by Pitbull containing competitive names with Lukebaby), Pitbull shall not renew and shall allow such registrations to expire at the end of their current term and, in the event Lukebaby and/or Bleicher chooses to register such names, Pitbull shall execute such documents as the domain registrar(s) shall require for Lukebaby and/or Bleicher to obtain the registration, any costs of transfer requested by Lukebaby shall be borne by Lukebaby.

11.     Lukebaby fully warrants, agrees and covenants that upon the execution of this Agreement, Lukebaby will, beginning on the date of execution of this Agreement, or such later date as Pitbull provides conforming copy to Lukebaby, display one (1) of Pitbull's website banners in the first or second spot and four (4) other banners in top ten placement on cocoboyz.com, thugboy.com, papicock.com, olatin.com and cocodorm.com for a period of five (5) months from the date of execution of this Agreement.  Pitbull's banner shall conform to the banner size, shape and other reasonable requirements of banners displayed on the web page pursuant to Lukebaby's web master revenue sharing program.  The webpage will be defined as the page of each site where links or banners are currently displayed (i.e. http://www.cocodorm.com/links/index.html). At the conclusion of five (5) months, Pitbull may enter into Lukebaby's standard web master

revenue sharing program to continue to be displayed on the links page, Pitbull shall be treated in the same manner as other companies participating in such a program with Lukebaby.

     12.   Parties fully warrant, agree and covenant that any entities controlled, owned or for which the Party has an interest in now and in the future, will immediately completely cease and desist <u>forever</u> from intentionally using any privileged, confidential or proprietary information or materials, including without limitation files, pictures, and digital content, obtained from the other Party, regardless of the manner in which the material or information was provided to such Party, without the prior written consent of the other Party. Without admission of any fault or wrongdoing by either Party, Parties fully warrant, agree and covenant that in the event a Party, at the time of execution of Agreement, is in possession of any material or information referred to in the preceding sentence, said Party will immediately completely and <u>forever</u> destroy such information or in the alternative, at the Party's sole option, deliver such materials or information to the other Party. Any use of privileged or proprietary information shall constitute a breach of the Stipulation of Settlement, and result in damages in the amount of $2,000 per material per unauthorized use.

     13.   Lukebaby fully warrants, agrees and covenants that upon the execution of this Agreement, Lukebaby will pay $5,000 to Pitbull, thereafter, Lukebaby shall pay to Pitbull $1,000 per month, for five (5) months subsequent to the execution of this

agreement for a total of an additional $5,000 in addition to the $5,000 paid herewith the execution of this agreement.

14.     Lukebaby fully warrants, agrees and covenants that if any of the payments described in ¶ 13 are late there will be a $100 surcharge for the first seven (7) days of deficiency and an additional $50 surcharge for each day beyond the initial seven (7) days that the payment is delinquent;  and if collection via counsel is necessary, for an amount exceeding exclusively interest, Lukebaby fully warrants, agrees and covenants that Lukebaby will pay any and all attorney's fees and the jurisdiction for such legal action will be New York.

15.     Parties, their successors, assigns, and agents, fully warrant, agree and covenant to hold this Agreement in strictest confidence and to divulge its existence, terms, conditions and other contents to no other person, party or entity.  Parties, their successors, assigns, and agents, also agree to treat as strictly confidential, and to refrain from divulging the contents or existence of, any and all documents, communications, statements, and other evidence relevant to the Federal Action under which this Stipulation of Settlement is made, including, without limitation, any and all information and materials relating to the business activities known or learned about each other, such as knowledge of business practices and documents pertaining thereto, accounting practices and documents pertaining thereto, and any governmental records denominated in the name of either party or any business they operated.

6

16.     By reason of the covenants and agreements set forth in this Stipulation of Settlement, Parties agree to release each other from any and all claims and pleadings set forth in the Federal Action.  Such General Mutual Releases shall be executed contemporaneously with the Execution of this Stipulation by the parties (annexed hereto and incorporated herein as Exhibit B is the General Mutual Release).

17.     Parties fully warrant, agree and covenant that upon the execution of this Agreement, Party will execute a declaration confirming that Party and all business entities Party controls, owns or has an interest in now and in the future, including Lukebaby and Pitbull have complied with all terms listed in ¶ 1-16 above.

Pitbull Productions, Inc.

Edward Desmond,                          Dated: _19. AUG. 04_
Owner, Chairman                                 New York, New York
Pitbull Productions, Inc.

State of New York          :
                                             : SS.:
County of New York         :

On _AUSUSr  19_ , 2004 before me, the undersigned, personally appeared

personally known to me or proved to me on the basis of satisfactory evidence to the be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Signature and Office of Person Taking Acknowledgment

_Registration_    No.   02 MEG095418

7

Philip Bleicher, individually and d/b/a
LBPI a/k/a Lukebaby Productions, Inc.


_Philip Bleicher,_
Philip Bleicher,
Owner,
Lukebaby Productions, Inc.

Dated:  _8/23/04_
New York, New York


State of New York        :
                                    : SS.:
County of New York      :

On _August 23_, 2004 before me, the undersigned, personally appeared

personally known to me or proved to me on the basis of satisfactory evidence to the be
the individual(s) whose name(s) is (are) subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and
that by his/her/their signature(s) on the instrument, the individual(s), or the person upon
behalf of which the individual(s) acted, executed the instrument.


Signature and Office of Person Taking Acknowledgment
HAVONA MADAMA
Notary Public, State of New York
No. 02MA6018529
Qualified in New York County
Commission Expires January 11, 200?

8

EXHIBIT A
TO STIPULATION OF SETTLEMENT
PITBULL VS. LUKEBABY 04 CV 1710 (RMB)

COCO-BOYS.COM
COCO-BOYZ.COM
COCO-DORM.COM
COCOBOYSLIVE.COM
COCOBOYSVIDEO.COM
COCOBOYSVIDEOS.COM
COCOBOYZLIVE.COM
COCOBOYZVIDEO.COM
COCOBOYZVIDEOS.COM
COCODORMLIFE.COM
COCODORMVIDEO.COM
COCODORMVIDEOS.COM
COCOWOMEN.COM
LUKEBABYLIVE.COM
LUKEBABYVIDEO.COM
LUKEBABYVIDEOS.COM
MIXITUPTHUGS.COM
MIXITUPTHUGZ.COM
O-LATIN.COM
OLATINOS.COM
PAPI-COCK.COM
PAPICOCKLIVE.COM
PAPICOCKS.COM
PAPICOCKVIDEO.COM
THUGZ4SEX.COM
THUGZFORSEX.COM

9

EXHIBIT B
TO STIPULATION OF SETTLEMENT
PITBULL VS. LUKEBABY 04 CV 1710 (RMB)

MUTUAL GENERAL RELEASES

For good and valuable consideration, Plaintiff Pitbull releases and forever discharges Defendants Philip Bleicher individually and d/b/a LBPI a/k/a Lukebaby Productions, Inc. and their parents, subsidiaries, predecessors, divisions, committees, affiliates, successors and assigns of and from all actions, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims and demands whatsoever, known or unknown, in law, admiralty or equity, which against them or any of them, whether jointly or severally, Plaintiff Pitbull and its parents, subsidiaries, predecessors, divisions, committees, affiliates, successors and assigns ever had, now have or hereafter can, shall or may have for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the date of this Stipulation of Settlement arising out of or in any way related to the claims and pleading of the Second Amended Complaint in the Federal Action PITBULL VS. LUKEBABY 04 CV 1710 (RMB).

For good and valuable consideration, Defendant releases and forever discharges Plaintiff and its parents, subsidiaries, predecessors, divisions, committees, affiliates, successors and assigns of and from all actions, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims and demands whatsoever, known or unknown, in law, admiralty or equity, which against them or any of them, whether jointly or severally, Plaintiff and its parents, subsidiaries, predecessors, divisions, committees, affiliates, successors and assigns ever had, now have or hereafter can, shall or may have for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the date of this Stipulation of Settlement arising out of or in any way related to the claims and pleading of the Second Amended Complaint in the Federal Action PITBULL VS. LUKEBABY 04 CV 1710 (RMB).

Nothing herein shall be construed to terminate those provisions in the Agreement concerning ownership, proprietary rights, confidentiality or other provisions intended to survive the Agreement.

10

# EXHIBIT B

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------x
PITBULL PRODUCTIONS, Inc.,              :
                    Plaintiff,          :
              v.                        :          04 CV 1710 (RMB)
                                        :
                                        :          STIPULATION OF
Philip Bleicher individually            :          SETTLEMENT
and d/b/a LBPI a/k/a Lukebaby           :
Productions, Inc.  Next Magazine,       :
                    Defendant.          :
------------------------------------------------------x
```

## RECITALS

1.    Pitbull Productions, Inc. ("Pitbull") is a company organized and registered

in Delaware, existing under the laws of Delaware with a place of business located at 200

East 116th Street, Suite 2N, New York, New York 10029.

2.    LBPI a/k/a Lukebaby Productions, Inc. ("Lukebaby") is a company

organized and registered in Illinois, existing under the laws of Illinois with a place of

business located at 40 East Chicago, Suite 162, Chicago Illinois 60611.

3.    Philip Bleicher ("Bleicher") is a natural person and the owner of

Lukebaby.

4.    On March 2, 2004, Pitbull commenced a civil action in the United States

District Court for the Southern District of New York, Index No. 04 CV 1710 (RMB)

("the Federal Action") captioned "Pitbull Productions, Inc., v. Philip Bleicher

individually and d/b/a LBPI a/k/a Lukebaby Productions, Inc. and Next Magazine"  The

Federal Action is presently assigned to the Honorable Richard M. Berman and is

presently pending.

4.    In the complaint, Pitbull alleges trademark and trade dress infringement, false designation of origin, trademark cybersquatting, common law trademark infringement and unfair competition, copyright infringement and trade secret misappropriation.

5.    In its answer, Lukebaby interposed Counter-Claims for trademark and trade dress infringement, false designation of origin, trademark cybersquatting, common law trademark infringement and unfair competition, copyright infringement, interference with business opportunity, slander and defamation, breach of implied covenant of good faith and fair dealing, breach of fiduciary duty and disclosure of trade secrets.


**TERMS**

1.    Bleicher fully warrants, agrees and covenants that upon the execution of this Agreement, he and all business entities he controls, owns or has an interest in now and in the future, including Lukebaby will immediately completely cease and desist <u>forever</u> from any and all use of the "Thugporno" mark.

2.    Bleicher fully warrants, agrees and covenants that upon the execution of this Agreement, he and all business entities he controls, owns or has an interest in now and in the future, including Lukebaby will immediately completely cease and desist <u>forever</u> from any and all use of any mark confusingly similar with the "Thugporn" trademark.

3.    Bleicher fully warrants, agrees and covenants that upon the execution of this Agreement, he and all business entities he controls, owns or has an interest in now and in the future, including Lukebaby will immediately completely cease and desist

2

<u>forever</u> from the pursuit of any trademark confusingly similar with any trademark trade dress or mark owned and/or used by Pitbull.

       4.     Bleicher fully warrants, agrees and covenants that upon the execution of this Agreement, he and all business entities he controls, owns or has an interest in now and in the future, including Lukebaby will immediately completely cease and desist <u>forever</u> from any and all use of any mark confusingly similar to any trademark or trade dress owned or controlled by Pitbull.

       4.     Bleicher fully warrants, agrees and covenants that upon the execution of this Agreement, he and all business entities he controls, owns or has an interest in now and in the future, including Lukebaby will immediately transfer control of www.thugporno.com to Pitbull.

       5.     Bleicher fully warrants, agrees and covenants that upon the execution of this Agreement, he and all business entities he controls, owns or has an interest in now and in the future, including Lukebaby will immediately transfer control of the www.thugpron.com website to Pitbull.

       6.     Bleicher fully warrants, agrees and covenants that upon the execution of this Agreement, he and all business entities he controls, owns or has an interest in now and in the future, including Lukebaby will immediately transfer control of any web domain confusingly similar to the "Thugporn" trademark which he owns the rights to Pitbull.

       7.     Bleicher fully warrants, agrees and covenants that upon the execution of this Agreement, he and all business entities he controls, owns or has an interest in now and in the future, including Lukebaby will, starting the date of execution of this

agreement, display five (5) banners advertising Pitbulls' websites (i.e.

www.thugporn.com, www.netdixx.com, www.thugmart.com, www.tiger-tyson.com and

www.connectathug,com) on each website Bleicher controls, owns or has an interest in for

no less than eighteen (18) months in the top 20 percent (20%) of the webpage. The

webpage will be defined as the page of each site where links or banners are currently

displayed (i.e. http://www.cocodorm.com/links/index.html) and will include up to fifty

words of description below each banner and a hyperlink to each Pitbull website – each

banner will also be clickable to each respective Pitbull website. Bleicher's sites will be

defined as www.cocodorm.com, www.cocodormlive.com, www.cocostore.com,

www.cocoboyz.com, www.mixitupboy.com, www.blockbusterthugs.com,

www.thugsforsex.com, www.olatin.com, www.thugboy.com, www.boyhookup.com,

www.papicock.com and any other sites that Bleicher owns or controls.  If Bleicher

intentionally disables, removes, alters or tampers with the banners as agreed to above,

Bleicher pays $100 per day per banner).

       8.     Bleicher fully warrants, agrees and covenants that upon the execution of

this Agreement, he and all business entities he controls, owns or has an interest in now

and in the future, including Lukebaby will immediately turn over all information,

including but not limited to files, pictures and other digital content that was the fruit of

the illegal entry into Andre Maisonette's computer.

       9.     Bleicher fully warrants, agrees and covenants that upon the execution of

this Agreement, he and all business entities he controls, owns or has an interest in now

and in the future, including Lukebaby will immediately completely cease and desist

forever from any and all use of all information, including but not limited to files, pictures

and other digital content that was the fruit of the illegal entry into Andre Maisonette's computer.

10.     Bleicher fully warrants, agrees and covenants that upon the execution of this Agreement, he will provide a declaration by a third party computer expert stating that there is no surveillance software which may be used to monitor any computer system installed on any computer Bleicher or any business entities he controls, owns or has an interest in, has control over, owns or operates.

11.     Bleicher fully warrants, agrees and covenants that upon the execution of this Agreement, he and all business entities he controls, owns or has an interest in now and in the future, including Lukebaby will immediately completely cease and desist <u>forever</u> from advertising in Next Magazine, a corporation organized and existing under the laws of New York with a place of business at 121 Varick St. 3rd Floor St. New York, New York 10013.

12.     Bleicher fully warrants, agrees and covenants that upon the execution of this Agreement, he and all business entities he controls, owns or has an interest in now and in the future, including Lukebaby will immediately completely cease and desist <u>forever</u> from any and all use of Andre Maisonette's voice or any likeness thereof as an outgoing message on any telephone answering machine or voicemail system.

13.     Bleicher and Lukebaby fully warrant, agree and covenant that upon the execution of this Agreement, they will immediately pay $5,000 in damages to Pitbull and pay $1,000 each month, for five (5) months subsequent to the execution of this agreement for a total of an additional $5,000 in addition to the $5,000 paid herewith the execution of this agreement.

14.     Bleicher and Lukebaby fully warrant, agree and covenant that if any of the payments described in ¶ 13 are late there will be a $100 surcharge for the first seven (7) days of deficiency and an additional $100 surcharge for each day beyond the initial seven (7) days that the payment is delinquent; further if collection via counsel is necessary Bleicher and Lukebaby fully warrant, agree and covenant that they will pay any and all attorney's fees and the jurisdiction for such legal action will be New York.

15.     Pitbull, Bleicher and Lukebaby fully warrant, agree and covenant to hold this Agreement in strictest confidence and to divulge its existence, terms, conditions and other contents to no other person, party or entity.  Pitbull, Bleicher and Lukebaby also agree to treat as strictly confidential, and to refrain from divulging the contents or existence of, any and all documents, communications, statements, and other evidence relevant to the Federal Action under which this Stipulation of Settlement is made, including, without limitation, any and all information and materials relating to the business activities known or learned about each other, such as knowledge of business practices and documents pertaining thereto, accounting practices and documents pertaining thereto, and any governmental records denominated in the name of either party or any business they operated.

16.     By reason of the covenants and agreements set forth in this Stipulation of Settlement, Pitbull, Bleicher and Lukebaby, on behalf of themselves and their respective business entities, agree to execute General Mutual Releases, <u>except for obligations arising out of this agreement</u>, from any and all claims and pleadings set forth in the Federal Action.  Such General Mutual Releases are to be executed within 10 (ten) days of the Execution of this Stipulation by the parties.

6

17.     Bleicher fully warrants, agrees and covenants that upon the execution of this Agreement, he will execute a declaration confirming that he and all business entities he controls, owns or has an interest in now and in the future, including Lukebaby have complied with all terms listed in ¶ 1-16 above.

Pitbull Productions, Inc.


_____

Edward Desmond,                              Dated: _____
Owner, Chairman                                       New York, New York
Pitbull Productions, Inc.




State of New York                 :
                                                 : SS.:
County of New York              :

On _____, 2004 before me, the undersigned, personally appeared

personally known to me or proved to me on the basis of satisfactory evidence to the be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.


_____
Signature and Office of Person Taking Acknowledgment


Philip Bleicher, individually and d/b/a
LBPI a/k/a Lukebaby Productions, Inc.

_____

Philip Bleicher,                              Dated: _____

Owner,                                                  New York, New York

Lukebaby Productions, Inc.


State of New York                    :

                                                        : SS.:

County of New York                 :

On _____, 2004 before me, the undersigned, personally appeared

personally known to me or proved to me on the basis of satisfactory evidence to the be
the individual(s) whose name(s) is (are) subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and
that by his/her/their signature(s) on the instrument, the individual(s), or the person upon
behalf of which the individual(s) acted, executed the instrument.


_____

Signature and Office of Person Taking Acknowledgment

8

# EXHIBIT C

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------x
PITBULL PRODUCTIONS, Inc.,     :
          Plaintiff,     :
    v.            :         04 CV 1710 (RMB)
                     :
                     :         STIPULATION OF
Philip Bleicher individually     :         SETTLEMENT
and d/b/a LBPI a/k/a Lukebaby     :
Productions, Inc.  Next Magazine,     :
            Defendant.     :
---------------------------------------------------x

## RECITALS

1.     Pitbull Productions, Inc. ("Pitbull") is a company organized and registered in Delaware, existing under the laws of Delaware with a place of business located at 200 East 116th Street, Suite 2N, New York, New York 10029.

2.     Lukebaby Productions, Inc. ("Lukebaby") is a company organized and registered in Illinois, existing under the laws of Illinois with a place of business located at 40 East Chicago, Suite 162, Chicago Illinois 60611.

3.     On March 2, 2004, Pitbull commenced a civil action in the United States District Court for the Southern District of New York, Index No. 04 CV 1710 (RMB) ("the Federal Action") captioned "Pitbull Productions, Inc., v. Philip Bleicher individually and d/b/a LBPI a/k/a Lukebaby Productions, Inc. and Next Magazine".  The Federal Action is presently assigned to the Honorable Richard M. Berman and is presently pending.

4.     In the Second Amended Complaint, Pitbull alleges trademark and trade dress infringement, false designation of origin, trademark cybersquatting, common law

> **Deleted:** LBPI a/k/a

> **Deleted:** 3.  Philip Bleicher ("Bleicher") is a natural person and the owner of Lukebaby.¶
>   4

> **Deleted:** c

trademark infringement and unfair competition, copyright infringement and trade secret misappropriation.

5.    In its answer, Lukebaby interposed Counter-Claims for trademark and trade dress infringement, false designation of origin, trademark cybersquatting, common law trademark infringement and unfair competition, copyright infringement, interference with business opportunity, slander and defamation, breach of implied covenant of good faith and fair dealing, breach of fiduciary duty and disclosure of trade secrets.

## TERMS

1.    Lukebaby fully warrants, agrees and covenants that upon the execution of this Agreement, Lukebaby shall redirect visitors to the website "www.thugporno.com" to Pitbull's website "www.thugporn.com" until such time as the domain name registration expires. Lukebaby shall allow the registration of thugporno.com to expire at the end of the current registration term.  Pitbull shall indemnify and defend Lukebaby, including attorney's fees, for and against any and all legal action instituted against Lukebaby resulting from Pitbull's use of the domain name thugporno.com.

2.    Lukebaby fully warrants, agrees and covenants that upon the execution of this Agreement, Lukebaby, its subsidiaries and assigns, shall not register any domain name containing variations of the word "thugporn".  In the event Lukebaby currently has any registrations of domain names containing the word "thugporn", including without limitation, www.thugpron.com, Lukebaby fully warrants, agrees and covenants that upon execution of this Agreement, Lukebaby shall not utilize such registrations, shall allow such registrations to expire at the end of their term and, in the event Pitbull chooses to

| Deleted: Bleicher |
| --- |

| Deleted: he and all business |
| --- |

| Deleted: entities he controls, owns or has an interest in now and in the future, including Lukebaby will immediately completely cease and desist forever from any and all use of the "Thugporno" mark. |
| --- |

| Deleted: Bleicher |
| --- |

| Deleted: he and all business entities he controls |
| --- |

| Deleted: owns or has an interest in now and in the future, including Lukebaby will immediately completely cease and desist forever |
| --- |

2

register such names, shall execute such documents as the domain registrar(s) shall require for Pitbull to obtain the registration, any costs of transfer requested by Pitbull shall be borne by Pitbull.

  3. Pitbull fully warrants, agrees and covenants that upon the execution of this Agreement, Pitbull, its subsidiaries and assigns, shall not register or operate any domain name containing variations of Lukebaby domain names, including without limitation cocodorm, cocostore, cocoboyz, mixitupboy, blockbusterthugs, thugsforsex, olatin, thugboy, boyhookup, and papicock. Pitbull fully warrants, agrees and covenants that upon execution of this Agreement, Pitbull shall not utilize any of the competitive domain names registered by Pitbull (annexed hereto as Exhibit A is a list of domain names purchased by Pitbull containing competitive names with Lukebaby), Pitbull shall allow such registrations to expire at the end of their term and, in the event Lukebaby chooses to register such names, shall execute such documents as the domain registrar(s) shall require for Lukebaby to obtain the registration, any costs of transfer requested by Lukebaby shall be borne by Lukebaby.

  4. Lukebaby fully warrants, agrees and covenants that upon the execution of this Agreement, Lukebaby will, beginning on the date of execution of this agreement, or such later date as Pitbull provides conforming copy to Lukebaby, display one (1) banner advertising each of Pitbulls' websites www.thugporn.com, www.netdixx.com, www.thugmart.com, www.tiger-tyson.com and www.connectathug.com on Cocoboyz.com, Thugboy.com, Papicoc.com, OLatin.com, and Cocodorm.com for five (5) months. Pitbull's banner shall conform to the banner size, shape and other reasonable requirements of banners displayed on the web page pursuant to Lukebaby's web master

3

**Formatted:** Indent: First line: 36 pt

**Deleted:** from any and all use of any mark confusingly similar with the "Thugporn" trademark

**Deleted:** 3. Bleicher fully warrants, agrees and covenants that upon the execution of this Agreement, he and all business entities he controls, owns or has an interest in now and in the future, including Lukebaby will immediately completely cease and desist forever from the pursuit of any trademark confusingly similar with any trademark trade dress or mark owned and/or used by Pitbull.¶
4. Bleicher fully warrants, agrees and covenants that upon the execution of this Agreement, he and all business entities he controls, owns or has an interest in now and in the future, including Lukebaby will immediately completely cease and desist forever from any and all use of any mark confusingly similar to any trademark or trade dress owned or controlled by Pitbull.¶
4. Bleicher fully warrants, agrees and covenants that upon the execution of this Agreement, he and all business entities he controls, owns or has an interest in now and in the future, including Lukebaby will immediately transfer control of www.thugporno.com to Pitbull.¶
5. Bleicher fully warrants, agrees and covenants that upon the execution of this Agreement, he and all business entities he controls, owns or has an interest in now and in the future, including Lukebaby will immediately transfer control o[... [1]]

**Deleted:** 7

**Deleted:** Bleicher

**Deleted:** he and all business entities he controls, owns or has an interest i[... [2]]

**Deleted:** starting

**Deleted:** five

**Deleted:** 5

**Deleted:** s

**Deleted:** (i.e.

**Deleted:**

**Deleted:** .com

**Deleted:** )

**Deleted:** each website Bleicher controls, owns or has an interest in

**Deleted:** no

**Deleted:** less than eighteen

**Deleted:** 18

**Deleted:** in the top 20 percent (20%) of the webpage

revenue sharing program.   The webpage will be defined as the page of each site where

links or banners are currently displayed (i.e.

http://www.cocodorm.com/links/index.html).  At the conclusion of five (5) months,

Pitbull may enter into Lukebaby's standard web master revenue sharing program to

continue to be displayed on the links page, Pitbull shall be treated in the same manner as

other companies participating in such a program with Lukebaby.

     5.    Parties fully warrants, agrees and covenants that upon the execution of this

Agreement, Parties, their sucessors and assigns shall not intentionally use any privileged,

confidential or proprietary information, including but not limited to files, pictures and

other digital content, owned by another Party, regardless of the manner in which the

material was provided to such Party, without the prior written consent of the other Party.

     6.    Lukebaby fully warrants, agrees and covenants that upon the execution of

this Agreement, Lukebaby will pay $5,000 to Pitbull, thereafter, Lukebaby shall pay to

Pitbull $1,000 per month, for five (5) months subsequent to the execution of this

agreement for a total of an additional $5,000 in addition to the $5,000 paid herewith the

execution of this agreement.

     7.    Lukebaby fully warrants, agrees and covenants that if any of the payments

described in ¶ 13 are late Pitbull shall be entitled to collect interest on the payments in the

amount of fifteen (15%) percent a.p.r., and if collection via counsel is necessary, for an

amount exceeding exclusively interest, Lukebaby fully warrants, agrees and covenants

that Lukebaby will pay any and all attorney's fees and the jurisdiction for such legal

action will be New York.

**Deleted:** and will include up to fifty words of description below each banner and a hyperlink to each Pitbull website – each banner will also be clickable to each respective Pitbull website

**Deleted:** Bleicher's sites will be defined as www.cocodorm.com, www.cocodormlive.com, www.cocostore.com, www.cocoboyz.com, www.mixitupboy.com, www.blockbusterthugs.com, www.thugsforsex.com, www.olatin.com, www.thugboy.com, www.boyhookup.com, www.papicock.com and any other sites that Bleicher owns or controls.  If Bleicher intentionally disables, removes, alters or tampers with the banners as agreed to above,  Bleicher pays $100 per day per banner).¶

**Deleted:** 8.  Bleicher fully warrants, agrees and covenants that upon the execution of this Agreement, he and all business entities he controls, owns or has an interest in now and in the future, including Lukebaby will immediately turn over all information, including but not limited to files, pictures and other digital content that was the fruit of [...3]

**Deleted:** 9

**Deleted:** Bleicher

**Deleted:** he and all business entities he controls, owns or has an interest in [...4]

**Deleted:** will immediately completely cease and desist forever from any and all

**Deleted:** of all

**Deleted:** that was the fruit of the illegal entry into Andre Maisonette's computer

**Deleted:** ¶
10.  Bleicher fully warrants, agr [...5]

**Deleted:** 13

**Deleted:** Bleicher and

**Deleted:** they

**Deleted:** immediately p

**Deleted:** in damages to

**Deleted:** and

**Deleted:** each

**Deleted:** 14

**Deleted:** Bleicher and L

**Deleted:** there will be a $100 surcharge for the first seven (7) days of defi [...6]

**Deleted:** further

**Deleted:** Bleicher and

**Deleted:** they

8.    Parties, their successors, assigns, and agents, fully warrant, agree and covenant to hold this Agreement in strictest confidence and to divulge its existence, terms, conditions and other contents to no other person, party or entity.  Parties, their successors, assigns, and agents, also agree to treat as strictly confidential, and to refrain from divulging the contents or existence of, any and all documents, communications, statements, and other evidence relevant to the Federal Action under which this Stipulation of Settlement is made, including, without limitation, any and all information and materials relating to the business activities known or learned about each other, such as knowledge of business practices and documents pertaining thereto, accounting practices and documents pertaining thereto, and any governmental records denominated in the name of either party or any business they operated.

9.    By reason of the covenants and agreements set forth in this Stipulation of Settlement, Parties agree to execute General Mutual Releases, except for obligations arising out of this agreement, from any and all claims and pleadings set forth in the Federal Action.  Such General Mutual Releases shall be executed contemporaneously with the Execution of this Stipulation by the parties.

[Jennifer, why don't you want to include the releases in the agreement?]

Pitbull Productions, Inc.


_____
Edward Desmond,                    Dated: _____
Owner, Chairman                            New York, New York
Pitbull Productions, Inc.

State of New York              :
                                       : SS.:

5

Deleted: 15

Deleted: itbull, Bleicher and Lukebaby

Deleted: itbull, Bleicher and Lukebaby

Deleted: 16

Deleted: itbull, Bleicher and Lukebaby, on behalf of themselves and their respective business entities

Deleted: ,

Deleted: are to be

Deleted: within 10 (ten) days

Deleted: of

Deleted: ¶
¶
¶
¶

County of New York            :

On _____, 2004 before me, the undersigned, personally appeared

personally known to me or proved to me on the basis of satisfactory evidence to the be
the individual(s) whose name(s) is (are) subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and
that by his/her/their signature(s) on the instrument, the individual(s), or the person upon
behalf of which the individual(s) acted, executed the instrument.


_____
Signature and Office of Person Taking Acknowledgment

Philip Bleicher, individually and d/b/a
LBPI a/k/a Lukebaby Productions, Inc.


_____
Philip Bleicher,                         Dated: _____
Owner,                                            New York, New York
Lukebaby Productions, Inc.


State of New York             :
                                          : SS.:
County of New York            :

On _____, 2004 before me, the undersigned, personally appeared

personally known to me or proved to me on the basis of satisfactory evidence to the be
the individual(s) whose name(s) is (are) subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and
that by his/her/their signature(s) on the instrument, the individual(s), or the person upon
behalf of which the individual(s) acted, executed the instrument.


_____
Signature and Office of Person Taking Acknowledgment

Deleted: ¶

3.      Bleicher fully warrants, agrees and covenants that upon the execution of this Agreement, he and all business entities he controls, owns or has an interest in now and in the future, including Lukebaby will immediately completely cease and desist <u>forever</u> from the pursuit of any trademark confusingly similar with any trademark trade dress or mark owned and/or used by Pitbull.

4.      Bleicher fully warrants, agrees and covenants that upon the execution of this Agreement, he and all business entities he controls, owns or has an interest in now and in the future, including Lukebaby will immediately completely cease and desist <u>forever</u> from any and all use of any mark confusingly similar to any trademark or trade dress owned or controlled by Pitbull.

4.      Bleicher fully warrants, agrees and covenants that upon the execution of this Agreement, he and all business entities he controls, owns or has an interest in now and in the future, including Lukebaby will immediately transfer control of www.thugporno.com to Pitbull.

5.      Bleicher fully warrants, agrees and covenants that upon the execution of this Agreement, he and all business entities he controls, owns or has an interest in now and in the future, including Lukebaby will immediately transfer control of the www.thugpron.com website to Pitbull.

6.      Bleicher fully warrants, agrees and covenants that upon the execution of this Agreement, he and all business entities he controls, owns or has an interest in now and in the future, including Lukebaby will immediately transfer control of any web domain confusingly similar to the "Thugporn" trademark which he owns the rights to Pitbull.

| Page 3: [2] Deleted | Havona Madama | 8/11/2004 5:53 PM |

he and all business entities he controls, owns or has an interest in now and in the future, including

| Page 4: [3] Deleted | Havona Madama | 8/11/2004 6:22 PM |

      8.     Bleicher fully warrants, agrees and covenants that upon the execution of this Agreement, he and all business entities he controls, owns or has an interest in now and in the future, including Lukebaby will immediately turn over all information, including but not limited to files, pictures and other digital content that was the fruit of the illegal entry into Andre Maisonette's computer.

| Page 4: [4] Deleted | Havona Madama | 8/11/2004 6:23 PM |

he and all business entities he controls, owns or has an interest in now and in the future, including Lukebaby

| Page 4: [5] Deleted | Havona Madama | 8/11/2004 6:25 PM |

.

      10.     Bleicher fully warrants, agrees and covenants that upon the execution of this Agreement, he will provide a declaration by a third party computer expert stating that there is no surveillance software which may be used to monitor any computer system installed on any computer Bleicher or any business entities he controls, owns or has an interest in, has control over, owns or operates.

      11.     Bleicher fully warrants, agrees and covenants that upon the execution of this Agreement, he and all business entities he controls, owns or has an interest in now and in the future, including Lukebaby will immediately completely cease and desist forever from advertising in Next Magazine, a corporation organized and existing under the laws of New York with a place of business at 121 Varick St. 3rd Floor St. New York, New York 10013.

12.     Bleicher fully warrants, agrees and covenants that upon the execution of this Agreement, he and all business entities he controls, owns or has an interest in now and in the future, including Lukebaby will immediately completely cease and desist <u>forever</u> from any and all use of Andre Maisonette's voice or any likeness thereof as an outgoing message on any telephone answering machine or voicemail system.

| Page 4: [6] Deleted | Havona Madama | 8/11/2004 6:29 PM |
|---|---|---|

there will be a $100 surcharge for the first seven (7) days of deficiency and an additional $100 surcharge for each day beyond the initial seven (7) days that the payment is delinquent;

# EXHIBIT D

(this is a copy of the text of an email from Jennifer Meredith to Havona Madama 8/14/2004 Sat 1:19 pm to which settlement agreement.004 was attached)


Havona:

Please find attached a next draft.  Because of the point we are at in the litigation, and in speaking with Mr. Desmond, by next Tuesday we will need to have an agreement in place or we will be forced to go forward with matters, at which point because the costs of litigation will increase, the settlement agreement will be off the table.

Because of this, it is essential (1) we get the settlement agreement in place prior to Tuesday; and (2) get a date of deposition for Mr. Bleicher either towards the end of this week or the next.

As I have in the agreement, paragraph 9 is going to need some work.  Currently, we fear that your client may have our clients images and other Intellectual Property.  As such, a blanket statement will not work.  We need a declaration from Bleicher stating that he is not in possession of any photos or files belonging to Plaintiff or Andre or a computer experts declaration, stating the same.

You may also change the general releases paragraph 16 to include such language herein, if you prefer.

I am also reserving the right to change the settlement agreement at this point, as Edward has not reviewed the changes as of yet.  But, in the interests of completing this matter by Tuesday, I am providing a draft so that we may finalize.

Thanks,
Jennifer Meredith
Meredith & Keyhani, PLLC
315 Park Avenue South
19th Floor
New York, New York 10010
(212) 505-2840
(212) 202-3819 (Facsimile)
www.meredithkeyhani.com


This confidential transmission may be subject to the Attorney-Client Privilege,  an attorney work product, or strictly confidential. If you are not the intended recipient of this message, you may not disclose, print, copy or disseminate this information. If you have received this is error, please reply and notify the sender (only) and delete the message. Unauthorized interception of this e-mail is in violation of State and Federal criminal laws

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------x
PITBULL PRODUCTIONS, Inc.,              :
                      Plaintiff,         :
              v.                         :        04 CV 1710 (RMB)
                                         :
                                         :        STIPULATION OF
Philip Bleicher individually             :        SETTLEMENT
and d/b/a LBPI a/k/a Lukebaby            :
Productions, Inc.  Next Magazine,        :
                      Defendant.         :
-----------------------------------------------------x
```

**RECITALS**

1.     Pitbull Productions, Inc. ("Pitbull") is a company organized and registered

in Delaware, existing under the laws of Delaware with a place of business located at 200

East 116th Street, Suite 2N, New York, New York 10029.

2.     Lukebaby Productions, Inc. ("Lukebaby") is a company organized and

registered in Illinois, existing under the laws of Illinois with a place of business located at

40 East Chicago, Suite 162, Chicago Illinois 60611.

3.     Philip Bleicher ("Bleicher") is a natural person and the owner of

Lukebaby.

4.     On March 2, 2004, Pitbull commenced a civil action in the United States

District Court for the Southern District of New York, Index No. 04 CV 1710 (RMB)

("the Federal Action") captioned "Pitbull Productions, Inc., v. Philip Bleicher

individually and d/b/a LBPI a/k/a Lukebaby Productions, Inc. and Next Magazine".  The

Federal Action is presently assigned to the Honorable Richard M. Berman and is

presently pending.

---

**Deleted:** LBPI a/k/a

**Deleted:** ¶

**Deleted:**    3.

5.    In the Second Amended Complaint, Pitbull alleges trademark and trade dress infringement, false designation of origin, trademark cybersquatting, common law trademark infringement and unfair competition, copyright infringement and trade secret misappropriation.

6.    In its answer, Lukebaby interposed Counter-Claims for trademark and trade dress infringement, false designation of origin, trademark cybersquatting, common law trademark infringement and unfair competition, copyright infringement, interference with business opportunity, slander and defamation, breach of implied covenant of good faith and fair dealing, breach of fiduciary duty and disclosure of trade secrets.

## TERMS

7.    Lukebaby and Bleicher fully warrant, agree and covenant that upon the execution of this Agreement, Lukebaby and/ or Bleicher shall, upon execution of this agreement, redirect websites www.thugporno.com and www.thugpron.com to www.thugporn.com and within seventy two (72) hours Lukebaby and/or Bleicher shall provide proof of transfer of ownership and registration, at plaintiffs expense, of the websites "www.thugporno.com" and "www.thugpron.com" from Defendant Lukebaby and/or Bleicher to Plaintiff Pitbull.

8.    Lukebaby and Bleicher fully warrant, agree and covenant that any entities controlled, owned or for which Lukebaby and/or Bleicher has an interest in now and in the future, including Lukebaby will immediately completely cease and desist forever from any and all use of the "Thugporno" mark and any confusingly similar mark.

2

9.    Lukebaby and Bleicher fully warrants, agrees and covenants that upon the execution of this Agreement, Lukebaby and Bleicher, its subsidiaries and assigns, shall not register any domain name containing variations of the word "thugporn". In the event Lukebaby and/or Bleicher currently has any registrations of domain names containing the word "thugporn", including without limitation, www.thugpron.com, Lukebaby and Bleicher fully warrants, agrees and covenants that upon execution of this Agreement, shall transfer ownership and registration, at plaintiffs expense, of the websites.

10.    Pitbull fully warrants, agrees and covenants that upon the execution of this Agreement, Pitbull, its subsidiaries and assigns, shall not register or operate any domain name containing variations of Lukebaby and Bleicher domain names, including without limitation cocodorm, cocostore, cocoboyz, mixitupboy, blockbusterthugs, thugsforsex, olatin, thugboy, boyhookup, and papicock. Pitbull fully warrants, agrees and covenants that upon execution of this Agreement, Pitbull shall not utilize any of the competitive domain names registered by Pitbull (annexed hereto as Exhibit A is a list of domain names purchased by Pitbull containing competitive names with Lukebaby), Pitbull shall allow such registrations to expire at the end of their term and, in the event Lukebaby and Bleicher chooses to register such names, shall execute such documents as the domain registrar(s) shall require for Lukebaby and Bleicher to obtain the registration, any costs of transfer requested by Lukebaby shall be borne by Lukebaby.

11.    Lukebaby fully warrants, agrees and covenants that upon the execution of this Agreement, Lukebaby will, beginning on the date of execution of this agreement, or such later date as Pitbull provides conforming copy to Lukebaby, display one (1) of Pitbull's website banners in the first or second spot and four (4) other banners in top ten

3

placement on cocoboyz.com, thugboy.com, papicoc.com, olatin.com and cocdorm.com for five (5) months. Pitbull's banner shall conform to the banner size, shape and other reasonable requirements of banners displayed on the web page pursuant to Lukebaby's web master revenue sharing program.  The webpage will be defined as the page of each site where links or banners are currently displayed (i.e.

http://www.cocodorm.com/links/index.html).  At the conclusion of five (5) months, Pitbull may enter into Lukebaby's standard web master revenue sharing program to continue to be displayed on the links page, Pitbull shall be treated in the same manner as other companies participating in such a program with Lukebaby.

12.    Parties fully warrants, agrees and covenants that upon the execution of this Agreement, Parties, their sucessors and assigns shall not intentionally use any privileged, confidential or proprietary information, including but not limited to files, pictures and other digital content, owned by another Party, regardless of the manner in which the material was provided to such Party, without the prior written consent of the other Party. WE ARE GOING TO NEED TO WORK WITH THIS PARAGRAPH.

13.    Lukebaby fully warrants, agrees and covenants that upon the execution of this Agreement, Lukebaby will pay $5,000 to Pitbull, thereafter, Lukebaby shall pay to Pitbull $1,000 per month, for five (5) months subsequent to the execution of this agreement for a total of an additional $5,000 in addition to the $5,000 paid herewith the execution of this agreement.

14.    Lukebaby fully warrants, agrees and covenants that if any of the payments described in ¶ 13 are late there will be a $100 surcharge for the first seven (7) days of deficiency and an additional $50 surcharge for each day beyond the initial seven (7) days

4

---

Deleted: s
Deleted:  advertising each
Inserted: each
Deleted: of Pitbulls' websites
Deleted: on Cocoboyz.com, Thugboy.com, Papicoc.com, OLat… [6]
Inserted: of
Deleted: (i.e.
Deleted: :
Deleted: www.thugporn.com, … [7]
Deleted: each website Bleicher … [8]
Inserted:
Deleted: )
Deleted: www.thugmart.com, … [9]
Deleted: .com
Deleted: .com
Inserted: .com
Deleted: )
Inserted: Cocoboyz.com, … [10]
Deleted: for
Deleted: no …less than eighte… [11]
Field Code Changed
Deleted:  and will include up t… [12]
Deleted:  8.  Bleicher fully w… [13]
Deleted: ¶ … [14]
Inserted: 5
Deleted: 9…Bleicher …he and… [15]

Deleted: ¶ … [16]
Deleted: 6
Inserted: 6
Deleted: Bleicher and
Deleted: Lukebaby… … [17]
Deleted: they
Deleted: Lukebaby
Inserted: Lukebaby
Deleted:
Inserted:
Deleted: immediately p…in da… [18]
Deleted: 14
Deleted: 7
Inserted: 7
Deleted: Bleicher and L
Deleted: 10

that the payment is delinquent; and if collection via counsel is necessary, for an amount exceeding exclusively interest, Lukebaby fully warrants, agrees and covenants that Lukebaby will pay any and all attorney's fees and the jurisdiction for such legal action will be New York.

15    Parties, their successors, assigns, and agents, fully warrant, agree and covenant to hold this Agreement in strictest confidence and to divulge its existence, terms, conditions and other contents to no other person, party or entity.  Parties, their successors, assigns, and agents, also agree to treat as strictly confidential, and to refrain from divulging the contents or existence of, any and all documents, communications, statements, and other evidence relevant to the Federal Action under which this Stipulation of Settlement is made, including, without limitation, any and all information and materials relating to the business activities known or learned about each other, such as knowledge of business practices and documents pertaining thereto, accounting practices and documents pertaining thereto, and any governmental records denominated in the name of either party or any business they operated.

16    By reason of the covenants and agreements set forth in this Stipulation of Settlement, Parties agree to release each other from any and all claims and pleadings set forth in the Federal Action.  Such General Mutual Releases shall be executed contemporaneously with the Execution of this Stipulation by the parties.

17    Bleicher fully warrants, agrees and covenants that upon the execution of this Agreement, he will execute a declaration confirming that he and all business entities he controls, owns or has an interest in now and in the future, including Lukebaby have complied with all terms listed in ¶ 1-16 above.

5

Deleted: further

Deleted:  Bleicher and

Deleted: they

Deleted: 15

Deleted: 8

Inserted: 8

Deleted: itbull, Bleicher and Lukebaby

Deleted: itbull, Bleicher and Lukebaby

Deleted: 16

Deleted: 9

Inserted: 9

Deleted: itbull, Bleicher and Lukebaby, on behalf of themselves and their respective business entities

Deleted: ,

Deleted: execute General Mutual Releases, except for obligations arising out of this agreement,

Deleted: are to be

Deleted: within 10 (ten) days

Deleted: of

Deleted: [Jennifer, why don't you want to include the releases in the agreement?]¶

Deleted: 7

Pitbull Productions, Inc.


_____

Edward Desmond,                         Dated: _____
Owner, Chairman                                New York, New York
Pitbull Productions, Inc.

State of New York              :

                                         : SS.:

County of New York             :

On _____, 2004 before me, the undersigned, personally appeared

personally known to me or proved to me on the basis of satisfactory evidence to the be
the individual(s) whose name(s) is (are) subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and
that by his/her/their signature(s) on the instrument, the individual(s), or the person upon
behalf of which the individual(s) acted, executed the instrument.


_____
Signature and Office of Person Taking Acknowledgment

Philip Bleicher, individually and d/b/a
LBPI a/k/a Lukebaby Productions, Inc.


_____

Philip Bleicher,                        Dated: _____
Owner,                                         New York, New York
Lukebaby Productions, Inc.


State of New York              :

                                         : SS.:

County of New York             :

On _____, 2004 before me, the undersigned, personally appeared

personally known to me or proved to me on the basis of satisfactory evidence to the be
the individual(s) whose name(s) is (are) subscribed to the within instrument and

6

acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Signature and Office of Person Taking Acknowledgment

Deleted: ¶

7

| Page 3: [1] Inserted | Havona Madama | 8/11/2004 5:47 PM |

shall not utilize such registrations, shall allow such registrations to expire at the end of their term and, in the event Pitbull chooses to register such names, shall execute such documents as the domain registrar(s) shall require for Pitbull to obtain the registration, any costs of transfer requested by Pitbull shall be borne by Pitbull.

| Page 3: [2] Inserted | Havona Madama | 8/11/2004 6:06 PM |

3.      Pitbull fully warrants, agrees and covenants that upon the execution of this Agreement, Pitbull, its subsidiaries and assigns, shall not register or operate any domain name containing variations of Lukebaby

| Page 3: [3] Deleted | Havona Madama | 8/11/2004 5:49 PM |

from any and all use of any mark confusingly similar with the "Thugporn" trademark

| Page 3: [4] Deleted | Havona Madama | 8/11/2004 5:51 PM |

3.      Bleicher fully warrants, agrees and covenants that upon the execution of this Agreement, he and all business entities he controls, owns or has an interest in now and in the future, including Lukebaby will immediately completely cease and desist forever from the pursuit of any trademark confusingly similar with any trademark trade dress or mark owned and/or used by Pitbull.

4.      Bleicher fully warrants, agrees and covenants that upon the execution of this Agreement, he and all business entities he controls, owns or has an interest in now and in the future, including Lukebaby will immediately completely cease and desist forever from any and all use of any mark confusingly similar to any trademark or trade dress owned or controlled by Pitbull.

4.      Bleicher fully warrants, agrees and covenants that upon the execution of this Agreement, he and all business entities he controls, owns or has an interest in now

and in the future, including Lukebaby will immediately transfer control of www.thugporno.com to Pitbull.

     5.    Bleicher fully warrants, agrees and covenants that upon the execution of this Agreement, he and all business entities he controls, owns or has an interest in now and in the future, including Lukebaby will immediately transfer control of the www.thugpron.com website to Pitbull.

     6.    Bleicher fully warrants, agrees and covenants that upon the execution of this Agreement, he and all business entities he controls, owns or has an interest in now and in the future, including Lukebaby will immediately transfer control of any web domain confusingly similar to the "Thugporn" trademark which he owns the rights to Pitbull.

| Page 3: [5] Deleted | Havona Madama | 8/11/2004 5:53 PM |
|---|---|---|

he and all business entities he controls, owns or has an interest in now and in the future, including

| Page 4: [6] Deleted | Jennifer Meredith | 8/14/2004 1:12 PM |
|---|---|---|

on Cocoboyz.com, Thugboy.com, Papicoc, OLatin.com, and Cocodorm.com

| Page 4: [7] Deleted | Jennifer Meredith | 8/14/2004 1:12 PM |
|---|---|---|

www.thugporn.com, www.netdixx.com,

| Page 4: [8] Deleted | Havona Madama | 8/11/2004 5:54 PM |
|---|---|---|

each website Bleicher controls, owns or has an interest in

| Page 4: [9] Deleted | Jennifer Meredith | 8/14/2004 1:12 PM |
|---|---|---|

www.thugmart.com, www.tiger-tyson.com and www.connectathug

| Page 4: [10] Inserted | Havona Madama | 8/11/2004 6:13 PM |
|---|---|---|

Cocoboyz.com, Thugboy.com, Papicoc, OLatin.com, and Cocodorm.com

| Page 4: [11] Deleted | Havona Madama | 8/11/2004 6:13 PM |
|---|---|---|

no

| Page 4: [11] Deleted | Havona Madama | 8/11/2004 6:14 PM |

less than eighteen

| Page 4: [11] Deleted | Havona Madama | 8/11/2004 6:14 PM |

18

| Page 4: [11] Deleted | Havona Madama | 8/11/2004 6:14 PM |

in the top 20 percent (20%) of the webpage

| Page 4: [12] Deleted | Havona Madama | 8/11/2004 6:19 PM |

and will include up to fifty words of description below each banner and a hyperlink to

each Pitbull website – each banner will also be clickable to each respective Pitbull

website

| Page 4: [12] Deleted | Havona Madama | 8/11/2004 6:44 PM |

Bleicher's sites will be defined as www.cocodorm.com, www.cocodormlive.com,

www.cocostore.com, www.cocoboyz.com, www.mixitupboy.com,

www.blockbusterthugs.com, www.thugsforsex.com, www.olatin.com,

www.thugboy.com, www.boyhookup.com, www.papicock.com and any other sites that

Bleicher owns or controls.  If Bleicher intentionally disables, removes, alters or tampers

with the banners as agreed to above,  Bleicher pays $100 per day per banner).

| Page 4: [13] Deleted | Havona Madama | 8/11/2004 6:22 PM |

8.     Bleicher fully warrants, agrees and covenants that upon the execution of

this Agreement, he and all business entities he controls, owns or has an interest in now

and in the future, including Lukebaby will immediately turn over all information,

including but not limited to files, pictures and other digital content that was the fruit of

the illegal entry into Andre Maisonette's computer.

| Page 4: [14] Deleted | Jennifer Meredith | 8/13/2004 4:40 PM |

| Page 4: [14] Deleted | Jennifer Meredith | 8/14/2004 1:25 PM |

5

| Page 4: [15] Deleted | Havona Madama | 8/11/2004 6:23 PM |

9

| Page 4: [15] Deleted | Havona Madama | 8/11/2004 6:23 PM |

Bleicher

| Page 4: [15] Deleted | Havona Madama | 8/11/2004 6:23 PM |

he and all business entities he controls, owns or has an interest in now and in the future,

including Lukebaby

| Page 4: [15] Deleted | Havona Madama | 8/11/2004 6:23 PM |

will immediately completely cease and desist forever from any and all

| Page 4: [15] Deleted | Havona Madama | 8/11/2004 6:23 PM |

of all

| Page 4: [15] Deleted | Havona Madama | 8/11/2004 6:23 PM |

that was the fruit of the illegal entry into Andre Maisonette's computer

| Page 4: [16] Deleted | Havona Madama | 8/11/2004 6:25 PM |

.

10.    Bleicher fully warrants, agrees and covenants that upon the execution of this Agreement, he will provide a declaration by a third party computer expert stating that there is no surveillance software which may be used to monitor any computer system installed on any computer Bleicher or any business entities he controls, owns or has an interest in, has control over, owns or operates.

11.    Bleicher fully warrants, agrees and covenants that upon the execution of this Agreement, he and all business entities he controls, owns or has an interest in now

and in the future, including Lukebaby will immediately completely cease and desist <u>forever</u> from advertising in Next Magazine, a corporation organized and existing under the laws of New York with a place of business at 121 Varick St. 3rd Floor St. New York, New York 10013.

      12.    Bleicher fully warrants, agrees and covenants that upon the execution of this Agreement, he and all business entities he controls, owns or has an interest in now and in the future, including Lukebaby will immediately completely cease and desist <u>forever</u> from any and all use of Andre Maisonette's voice or any likeness thereof as an outgoing message on any telephone answering machine or voicemail system.

| Page 4: [16] Deleted | Havona Madama | 8/11/2004 6:36 PM |
|---|---|---|

13

| Page 4: [17] Deleted | Jennifer Meredith | 8/13/2004 4:41 PM |
|---|---|---|

Lukebaby

| Page 4: [17] Deleted | Jennifer Meredith | 8/13/2004 4:41 PM |
|---|---|---|

| Page 4: [18] Deleted | Havona Madama | 8/11/2004 6:49 PM |
|---|---|---|

immediately p

| Page 4: [18] Deleted | Havona Madama | 8/11/2004 6:49 PM |
|---|---|---|

in damages to

| Page 4: [18] Deleted | Havona Madama | 8/11/2004 6:49 PM |
|---|---|---|

and

| Page 4: [18] Deleted | Havona Madama | 8/11/2004 6:50 PM |
|---|---|---|

each

# EXHIBIT E

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
PITBULL PRODUCTIONS, Inc.                          :
                                                   :
                              Plaintiff,           :
                                                   :        04 CV 1710 (RMB) (DCF)
               -against-                           :
                                                   :        __ORDER OF DISCONTINUANCE__
PHILIP BLEICHER, individually and d/b/a,           :
LBPI a/k/a LUKEBABY PRODUCTIONS, INC.              :
NEXT MAGAZINE                                      :
                                                   :
                              Defendant.           :
-------------------------------------------------------------X

**Richard M. Berman, U.S.D.J.:**

      Based on the Stipulation of Settlement signed by Plaintiff on August 19, 2004 and Defendant

on August 23, 2004 and the letter from Plaintiff dated August 26, 2004 advising the Court that the

parties have agreed upon terms for a settlement, it is hereby

      **ORDERED**, that the above-entitled action be, and the same hereby is, discontinued.


**SO ORDERED**.

Dated: New York, New York
       September 7, 2004

                                    _RMB_

                            **Hon. Richard M. Berman, U.S.D.J.**